**TOVAR v. JARECKI, Collector of Internal Revenue.**

No. 9708.

United States Court of Appeals Seventh Circuit.

Feb. 25, 1949.

Ward H. Harris, of Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty, and Leroy R. Krein, Asst. U. S. Atty., both of Chi-

cago, Ill., Theron L. Caudle, Asst. Atty. Gen., and Frederic G. Rita and Ellis N. Slack, Sp. Assts. to Atty. Gen., for appellee.

Before MAJOR, Chief Judge, MINTON, Circuit Judge, and WHAM, District Judge.

MINTON, Circuit Judge.

The plaintiff-appellant filed a complaint to enjoin the Collector of Internal Revenue from the collection of a tax on marijuana assessed pursuant to 26 U.S.C.A. § 2590(a) (2) [1] for the reasons alleged that the tax was assessed pursuant to evidence obtained in an illegal search and seizure, and that the alleged tax is not a tax but a penalty. The Collector filed a motion to dismiss the complaint on the ground that the court had no jurisdiction to enjoin the collection of the tax because prohibited therefrom by Sec. 3653 of the Internal Revenue Code, 26 U.S.C.A. § 3653, and for the further reason that the plaintiff had an adequate remedy at law and the complaint failed to state a cause upon which relief could be granted. No answer was ever filed. The cause came on for hearing upon a motion of the plaintiff-appellant for a temporary injunction and the Collector's motion to dismiss. The District Court took the view that the so-called tax was a penalty, and although the court had in a previous criminal case [2] against the plaintiff in this case suppressed the evidence as to the marijuana for which the tax had been assessed because it had been obtained by an illegal search and seizure, it was unable to tell from the record before it whether the Collector relied upon the suppressed evidence in making the assessment. Although the District Court was of the opinion that the statute was penal and that there were grounds for the intervention of a court of equity, notwithstanding Sec. 3653 of the Internal Revenue Code, the court nevertheless denied the temporary injunction and

---

[1] "§ 2590. Tax—(a) Rate.

"There shall be levied, collected, and paid upon all transfers of marihuana which are required by section 2591 to be carried out in pursuance of written order forms taxes at the following rates: ·

\*     \*     \*     \*     \*     \*

"(2) Transfers to others.

"Upon each transfer to any person who has not paid the special tax and registered under sections 3230 and 3231, $100 per ounce of marihuana or fraction thereof."

[2] United States v. Tovar, No. 47 C.R. 359. No opinion for publication.

dismissed the complaint. The plaintiff has appealed from this judgment.

After a hearing of evidence and a statement of counsel made in the District Court on the submission above indicated, the following rather sorry story is revealed. The plaintiff is a Mexican who neither speaks nor understands the English language. He is employed as a molder in the steel mills and lives with his wife and several children in south Chicago in an old frame house that he and his wife are buying on contract for a total price of four thousand dollars, about two thousand of which they have paid. He owns no other property. He earns about $55 per week when he works steadily in the mills.

On April 18, 1947, certain police officers of the city of Chicago, without any warrant for the arrest of the plaintiff or for the search of his house, entered his residence and without any authority whatsoever made a search. The plaintiff, who was employed on the night shift, was in bed when the officers came. On the search they found 71 ounces and 48 grains of marijuana. The plaintiff had picked the marijuana in the alley back of his place. He intended to smoke it. He was arrested and placed in jail in the South Chicago Police Station where the next morning a Federal Narcotic Agent, Sojac, came to his cell to interview him. Notwithstanding the fact that Sojac neither spoke nor understood Spanish and the plaintiff neither spoke nor understood English, the agent, according to his testimony, talked to the plaintiff about the marijuana that had been taken from the plaintiff's home. The agent had seen the marijuana at the Police Station and had taken it into his possession after the interview. From this interview and with the possession of the marijuana which had been illegally seized, the agent made a report to the Commissioner of Internal Revenue in Washington, who thereupon certified the assessment for the transfer of the marijuana. When this report went to Washington does not appear, but the plaintiff first heard of the assessment when he received a notice in the mail that on July 25, 1947, a tax of over seven thousand dollars had been assessed against him. A notice of lien based upon this assessment was filed in the office of the Recorder of Cook County.

How the narcotic agent, who could neither speak nor understand Spanish, and the plaintiff, who could neither speak nor understand English, managed to have an interview as to where the marijuana came from, that the plaintiff had it for his own smoking, and that he was not licensed and had paid no tax, so that a report could be made to Washington based upon that interview, is a bit difficult to understand. When the plaintiff appeared in court in the instant proceedings, he had to be questioned through an interpreter. We think the District Court summed it up correctly when during the proceedings it stated:

"The police probably by prearrangement with the agent, because it happens so often, went out and searched this man's house illegally, and found some marijuana. I don't know where he got it. But he was indicted. And they brought him here, and I suppressed the evidence because I thought his constitutional rights were invaded.

"About the same time some other agency of the Government assessed a tax upon some marijuana. I assume it is the same marijuana."

On May 16, 1947, the plaintiff was indicted in the District Court for the Northern District of Illinois for being a transferee who, being required to pay a transfer tax on 71 ounces and 48 grains of marijuana, wilfully acquired the marijuana without having paid the tax on the transfer. As a defendant in that cause, the plaintiff here filed a motion to suppress the evidence, alleging that it had been obtained by means of an illegal search in violation of his constitutional rights. The District Court sustained this motion, whereupon the Government dismissed the prosecution but pursued the plaintiff in the tax case and made the assessment complained of here of over seven thousand dollars at the rate of $100 per ounce, all without any notice to or hearing of the plaintiff.

It will be observed that the present case involves the very same offense that the Government had started out to prosecute the plaintiff for and found it had no evi-

dence to offer in that case except such as had been seized in violation of the plaintiff's constitutional rights, and it was therefore forced to dismiss.

We think it quite plain that this statute is a penal and not a revenue-raising statute. If this plaintiff had been a licensed transferee, he would have had to pay a tax of $1 per ounce plus the charges for obtaining the license which taken together make a sizable amount and certainly would discourage the lawful use of this weed. But since the plaintiff was an unlicensed transferee, as claimed, he must pay $100 an ounce as a so-called tax. Does anyone suppose that the Government is trying to raise revenue in either instance? Is it not perfectly plain that what the Government is trying to do is to take this plaintiff's property and turn him and his family out on the street for not having a license to do something the Government did not want him to do? This the Government claims the right to do without notice or hearing and by means of its tax techniques when it could not convict for the same offense by a fair trial in a criminal proceeding.

▮ We hold that this section of the statute under which this plaintiff was assessed is a penal statute and not a tax statute. Since it is a penalty inflicted without a hearing and not a tax, Sec. 3653 of the Internal Revenue Code has no application. The Supreme Court has said in Lipke v. Lederer, 259 U.S. 557, 561, 42 S. Ct. 549, 66 L.Ed. 1061, that statutes like the instant statute are penal and that a court of equity may enjoin the assessment and collection of such penalty, notwithstanding Sec. 3653. In that case, the Court said:

"The mere use of the word 'tax' in an act primarily designed to define and suppress crime is not enough to show that within the true intendment of the term a tax was laid. Child Labor Tax Case ante, 20. When by its very nature the imposition is a penalty, it must be so regarded. Helwig v. United States, 188 U.S. 605, 613.[3] Evidence of crime (§ 29) is essential to assessment under § 35. It lacks all the ordinary characteristics of a tax, whose primary function 'is to provide for the support of the government' and clearly involves the idea of punishment for infraction of the law—the definite function of a penalty. O'Sullivan v. Felix, 233 U.S. 318, 324.[4]

"The Collector demanded payment of a penalty, and § 3224, which prohibits suits to restrain assessment or collection of any tax, is without application. And the same is true as to statutes granting the right to sue for taxes paid under protest. A revenue officer without notice has undertaken to assess a *penalty* for an alleged criminal act and threatens to enforce payment by seizure and sale of property without opportunity for a hearing of any kind." 259 U.S. pages 561, 562, 42 S.Ct. page 551. (Emphasis supplied.)

Justice Brandeis dissented for himself and Justice Pitney on the ground that it did not appear that the plaintiff in that case had no adequate remedy at law. The reason stated by him is as follows:

"The claim is for a small sum. For aught that appears, plaintiff might readily pay it under protest and bring an action against the Collector to recover the amount paid. If he does not wish to pay, he can let the distraint be made, and then sue for the trespass incident to wrongful distraint. And if personal property should be seized, he may replevy it. There is in the bill no allegation that the plaintiff is unable to pay the small amount claimed by the Government; nor of fraud or oppression or abuse of process on the part of the Collector; nor that a cloud will be cast upon title to real estate; nor that the property subject to distraint is of such a character that if distrained it will be sacrificed; nor that a proceeding in equity is necessary to prevent multiplicity of suits." 259 U.S. pages 563, 564, 42 S.Ct. page 551.

In its motion to dismiss, the Government assigned as a reason therefor that the plaintiff had an adequate remedy at law. In this case it is clear on the whole record that this laboring man, struggling to buy a cheap home that cost four thousand dollars, and which he had only half paid for,

---

[3] 23 S.Ct. 427, 47 L.Ed. 614.　　　　[4] 34 S.Ct. 596, 58 L.Ed. 980.

could not pay this tax of over seven thousand dollars and sue in the normal course to recover. To insist upon such procedure is, as the District Court said, unrealistic.

Even on this meager record, a proper conclusion. could be reached that the state officers, the Federal Narcotic Bureau, and the Internal Revenue Bureau acted in close liaison, to put it mildly, from the time the plaintiff's home was illegally searched and he was arrested and incarcerated, to the alleged interview the narcotic agent had 'with him in jail, which was followed sometime later by the' proceedings in the federal court and not in the state court. The District Court must have taken this view when it suppressed the evidence in the criminal case.

Surely the facts here fairly shout the equitable grounds for relief and that the plaintiff had no adequate remedy at law. We think they are clearly sufficient to meet even the test laid down by Justice Brandeis in his dissent in Lipke v. Lederer, supra. The statute was penal and the equitable grounds were present, and the preliminary injunction should have been granted.

In any view of this case, the plaintiff should not have been dismissed out of court. The judgment of the District Court is reversed and the cause remanded with directions to proceed in accordance with this opinion.