YOKE, Collector of Internal Revenue, v.
MAZZELLO et al.

No. 6497.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 14, 1952.

Decided Feb. 3, 1953.

George F. Lynch, Sp. Asst. to the Atty. Gen. (Charles S. Lyon, Acting Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson and Maryhelen Wigle, Sp. Assts. to the Atty. Gen., and A. Garnett Thompson, U. S. Atty., Charleston, W. Va., on the brief), for appellant.

Joseph Luchini, Beckley, W. Va. (Carl Sanders, Beckley, W. Va., on the brief), for appellees.

Before SOPER and DOBIE, Circuit Judges, and BARKSDALE, District Judge.

SOPER, Circuit Judge.

This appeal is taken from an order of the District Court overruling the Collector's motion to dismiss taxpayers' complaint which sought an injunction against the collection of a jeopardy assessment for income taxes for taxable years 1943 to 1950 inclusive, totaling $8,748.65 plus fraud penalties in the amount of $5,973.36. The complaint alleged the following pertinent facts:

Luigi Mazzello is 73 years of age and Chiara, his wife, is 62. Late in 1941 Chiara was deeded a piece of land in Beckley, West Virginia, fronting on a main highway, and in 1942 she completed construction of a two-story building on the lot, consisting of dwelling quarters and a large storeroom. Late in 1942 taxpayers moved into the dwelling quarters and shortly thereafter Chiara leased the store to one John Dicicuccio, who began to operate a restaurant and beer parlor on the premises in January, 1943, under the name "The Blue Star" after obtaining the requisite licenses in his name from federal, state, and county authorities. Dicicuccio operated the establishment until about June 30, 1946, and during this time the taxpayers had no interest in the enterprise except that their daughter worked for Dicicuccio for a time as an employee. See Mazzella v. Yoke, D. C., S.D.W.Va., 70 F.Supp. 462, in which

the District Court enjoined the collection from the taxpayers of cabaret taxes which accrued during Dicicuccio's tenancy.

From July 1, 1946, when Dicicuccio gave up the premises, until July, 1950, Luigi Mazzello operated "The Blue Star" and paid taxes on all income earned during that period. From July, 1950 to July, 1951, the business was run by taxpayers' son-in-law, and at the date of the complaint was run by Chiara Mazzello, her husband being physically unable to do so.

On January 29, 1952, the taxpayers received notice from the Collector advising them of jeopardy assessments for alleged deficiencies for the years 1943 to 1950, and making demand for immediate payment, and stating that if payment was not made within ten days a warrant of distraint would be issued. A similar notice was received on February 19, 1952. Thereafter, on March 10, 1952, a warrant of distraint for each of the years in question was issued and placed in the hands of the Deputy Collector to be levied upon the property of the taxpayers.

On March 11, 1952, the taxpayers filed a bond to stay the collection of the alleged deficiency in a sum double the amount of the assessment with personal sureties owning unencumbered real estate of a value in excess of $36,000; but the Collector "arbitrarily and capriciously" refused to accept the bond, stating that the surety on the bond was not satisfactory, and that under the policy of his office for many years the only acceptable bond was the delivery of personal property having a fair market value of at least the amount required in the bond, or a surety bond from a recognized bonding company in an amount equal to not less than double the assessment. In explanation the Collector said that personal bonds had been found to be insecure in so many cases that they were no longer accepted.

The taxpayers further alleged that they had no assets with which to pay the taxes except the property described above and other real estate, worth in all $18,000, and that if the distraint should be executed they would be ruined financially since they would lose their home, their business and their life savings, and would not be restored to their present condition by a successful suit for refund of the tax.

They further claimed that the assessments of tax on income earned from January 1, 1943 to July 1, 1946 should have been made against John Dicicuccio, who was the owner of "The Blue Star", and the recipient of the income during that period; and said that the Collector had improperly charged them with fraud in order that his claim for taxes should not be partially barred by the five year statute of limitations.

The two questions which are brought to our attention on this appeal are whether the circumstances of the case are so exceptional and extraordinary as to warrant the issuance of the injunction despite the prohibition contained in § 3653 of the Internal Revenue Code, 26 U.S.C.A., and whether the Collector was justified in refusing to accept the bond with personal sureties offered by the taxpayer. Section 3653(a) provides that no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court, except where a petition has been filed for the redetermination of a deficiency of income tax under Section 272(a); or a deficiency in estate tax under Section 871(a); or a deficiency in a gift tax under Section 1012(a) of the Internal Revenue Code. The terms of the statute taken literally would control the decision, but it has been construed by the courts to admit of exceptions other than those specified, and injunctions to stay the collection of taxes have been granted under special and extraordinary circumstances which were deemed sufficient to bring the case "within some acknowledged head of equity jurisprudence". Miller v. Standard Nut Margarine Co. of Fla., 284 U.S. 498, 52 S.Ct. 260, 263, 76 L.Ed. 422. This course has been followed in situations of dire necessity where it was believed that the assessment was clearly unlawful, or was levied against the wrong person, and the enforcement of the tax would inflict an irreparable loss upon the complainant; and in some instances an injunction has been granted un-

der circumstances not unlike those described in the complaint in the pending case.[1]

The need for an injunction by the court to restrain the enforcement of a jeopardy assessment, however, is affected by the provision of Section 273(f) of the Internal Revenue Code, that when such an assessment has been made, the taxpayer, within ten days after notice and demand, may obtain a stay of collection of the amount of the assessment by filing with the collector "a bond in such amount, not exceeding double the amount as to which the stay is desired, and with such sureties as the collector deems necessary".[2]

As we have seen, the taxpayers sought to avail themselves of this means of staying the enforcement of the assessment by filing a bond double the amount of the assessment, which aggregated the sum of $14,722.01, with sureties owning unencumbered real estate worth in excess of $36,-000.00; but the Collector rejected the bond on the ground that it was the policy of his office in every case to require the deposit of personal property equal in value to the amount required in the bond, or a surety bond of an approved bonding company in an amount double the assessment. Since the Collector had filed a distraint against the property of the taxpayers, it was obviously impossible for them to comply with either of these requirements; and his rejection of the personal bond offered deprived the taxpayers of the relief which the statute was designed to afford.

 It is contended that this action on the part of the Collector amounted to an abuse of the discretion lodged in him by the statute and justified the injunction granted by the District Court. We think that this contention should be sustained. The provisions of Section 273(f) of the Statute, in respect to bonds to stay the collection of jeopardy assessments, must be read in connection with the general statute, 6 U.S.C.A. § 6, which provides in its concluding sentence that no officer or person having the approval of any bond shall exact that it shall be furnished by a guaranty company or by any particular guaranty company.

The Collector contends that the last mentioned statute has no application to the issue in the case at bar because Title 6 of the Code is entitled "Official and Penal Bonds", and therefore does not relate to bonds offered by taxpayers to stay the enforcement of their tax liabilities. It is pointed out that the provisions of Title 6 were enacted into positive law by the Act of July 30, 1947, Chapter 390, Section 1, 61 Stat. 646, and hence it is argued that the interpretation of the several sections is controlled by the terms of the caption. We agree that the caption of a statute may be taken into consideration in construing the contents of the enactment; but we think that the general terms of the caption in this case must yield to the specific provisions of Section 6, which expressly cover any recognizance, stipulation, bond, or undertaking, which is required or permitted to be given by the laws of the United States, and is conditioned for the faithful performance of any duty or for doing or refraining from doing anything in such recognizance, stipulation, bond or undertaking. This sweeping language, prior to the enactment of the Code as positive law,

---

1. See the opinion of this court Shelton v. Gill, Collector, 202 F.2d 503.

2. "§ 273.—*Jeopardy Assessments.*
 "(f) *Bond to stay collection.* When a jeopardy assessment has been made the taxpayer, within 10 days after notice and demand from the collector for the payment of the amount of the assessment, may obtain a stay of collection of the whole or any part of the amount of the assessment by filing with the collector a bond in such amount, not exceeding double the amount as to which the stay is desired, and with such sureties, as the collector deems necessary, conditioned upon the payment of so much of the amount, the collection of which is stayed by the bond, as is not abated by a decision of the Board which has become final, together with interest thereon as provided in section 297. If any portion of the jeopardy assessment is abated by the Commissioner before the decision of the Board is rendered, the bond shall, at the request of the taxpayer, be proportionately reduced."

was construed by the Courts to cover civil and private undertakings as well as those of an official and penal character, see Newton v. Consolidated Gas Co., 265 U.S. 78, 44 S.Ct. 481, 68 L.Ed. 909, Concord Casualty & Surety Co. v. U. S., 2 Cir., 69 F.2d 78, 91 A.L.R. 885; and we think it should now be given the same meaning, especially as the statute was reenacted after it had been so construed by, the Courts. Moreover, the title of an act cannot limit the plain meaning of the text. Strathearn S. S. Co. v. Dillon, 252 U.S. 348, 354, 40 S.Ct. 350, 64 L.Ed. 607; U. S. v. Oregon & C. R. R. Co., 164 U.S. 526, 541, 17 S.Ct. 165, 41 L.Ed. 541.[3]

Since the Collector rejected the adequately secured bond offered by the taxpayers in this case on the sole ground that it was not executed by the corporate surety, his action cannot be approved. The judgment of the District Court is therefore affirmed.

3. In view of these decisions, the following administrative decisions to which our attention has been called, cannot govern the determination of this question. See Treasury decision No. 4591, C.B. Xiv–2, approved October 11, 1935; memorandum opinion of the Solicitor of Internal Revenue, No. 5086, rendered February 9, 1926.