SHELTON et al. v. GILL, Collector of
Internal Revenue et al.

No. 6534.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 13, 1953.

Decided Feb. 17, 1953.

504

Charles J. Henderson and Arthur M. Jenkins, Charlotte, N. C. (Henderson & Henderson, Charlotte, N. C., on the brief), for appellants.

Carolyn R. Just, Sp. Asst. to the Atty. Gen. (Charles S. Lyon, Asst. Atty. Gen., Ellis N. Slack and Fred E. Youngman, Sp. Assts. to the Atty. Gen., and Bryce R. Holt, U. S. Atty., Greensboro, N. C., on the brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

These actions were brought by R. C. Shelton, Jr. and Duckworth & Shelton, Inc., respectively to enjoin the collection of income taxes, penalties and interest in the sum of $70,191.06 covered by a jeopardy assessment issued on August 5, 1952 against the complainants as transferees of Raymond B. Duckworth and Dorothy L. Duckworth, his wife, by whom the tax liability to the United States in the sum mentioned had been incurred. In each case the complainants also asked for an order of court quashing the assessment and for a judgment of title to the property of the complainants free and clear of all claims of the United States filed as liens against the property of the complainants in the office authorized by law.

A temporary restraining order was granted by the District Judge and a motion to dismiss was filed by the defendants in each case upon which the cases came on for hearing. Pursuant to the motion to dismiss, the cases were submitted for decision upon the facts set out in the complaints and supporting affidavits, and after hearing, the judge, being of the opinion that the relief prayed was prohibited by Sec. 3653 of the Internal Revenue Code, 26 U.S.C.A. § 3653, denied the injunction and dismissed the complaint.

The transfers of property on which the United States bases its right to assess the tax liability of the Duckworths and the Sheltons against Shelton, Jr. and the Corporation, as the transferees of the Duckworths and the Sheltons, grew out of transactions between the Sheltons and the Duckworths. In 1944, Shelton, Sr. and Duckworth jointly purchased a quick finishing photographic business in Charlotte, North Carolina, for $3,800, of which each paid one-half, and thereafter they operated the business as partners until October 1, 1948. On that date Shelton, Jr. purchased Duckworth's one-half interest in the business for the sum of $2,000 which was given him by his father. The book value of the one-half interest was $2,167.39 and the market value did not exceed $2000. The net worth of Duckworth was the same after as before the transfer. The business has since been operated by the Sheltons.

In 1944 Shelton, Sr. and Duckworth purchased for $24,327.86 the property in which the photographic business was conducted. In 1945, they purchased other real estate in Charlotte for $17,962.93, and in 1947 they purchased a third property for $6,376.99. These purchases were financed for the most part by purchase money mortgages and the balance of the purchase money was paid in equal shares by Duckworth and Shelton, Sr. The latter managed the properties as well as the photographic business, while Duckworth devoted himself to his business interests in other parts of the country.

Business disagreements between Shelton, Sr. and Duckworth led them to terminate the partnership and form the complainant

corporation on August 27, 1948, to which they conveyed their jointly owned real estate subject to the assumption of the mortgage debts by the corporation. In consideration of the transfer the corporation on August 30, 1948 issued 404 shares of the capital stock of the par value of $100 each, of which 202 shares were issued to Duckworth or his wife, as nominee; 201 shares were issued to Shelton, Sr., and one share to Shelton, Jr., as nominee of his father. On September 28, 1948 Shelton, Sr. delivered 200 shares of the stock as a gift to Shelton, Jr. The fair market value of the real estate on the day of the transfer was $55,569.40, and the amount of the mortgage debts was $15,169.40, so that the equities acquired by the corporation were worth $40,400 and the stock issued by the corporation was worth $100 per share. The net worth of Duckworth and wife and of Shelton and wife was accordingly the same after as before the exchange of real estate or stock.

Neither Shelton, Jr. nor the corporation received any other transfer from the Duckworths or Sheltons; nor have they assumed or agreed to pay the tax liabilities or any liabilities of the transferor.

Notice of the lien for taxes in the sum of $70,191.06 owing by the Duckworths and the lien for taxes of $10,243.37 owing by Shelton, Sr. have been filed by the government in the proper office against the property of Shelton, Jr. and the property of the corporation. Notice of the levies, and the warrants of distraint have also been served on the corporation's bank of deposit in which it had a balance of $6,193.61, which the government attempted to seize and apply to the tax liability of the Duckworths and of the Sheltons as above described.[1]

The net worth of the corporation is substantially less than the liability claimed against it as transferee. The net worth of Shelton, Jr. is also less than the liability claimed against him since his property consists of a 1936 automobile, modest furniture,

the 201 shares of stock of the corporation and the one-half interest in the photographic business.

The Collector of Internal Revenue proceeded against Shelton, Jr. and the Corporation under Sec. 311(a) and (b) of the Internal Revenue Code, 26 U.S.C.A. § 311 (a, b), which provide that the liability at law or in equity of a transferee of property of a taxpayer in respect of the Federal income taxes shall be assessed, collected and paid in the same manner as a deficiency in the taxes, including the provisions with respect to notices and demand and the provisions with respect to distraint and proceedings in court for collection. In conformity with this section the Collector proceeded under Sec. 273 of the Internal Revenue Code, 26 U.S.C.A. § 273, to make jeopardy assessments and serve notices on the defendants of tax liens and filed the notices in the appropriate offices to constitute liens against their properties, and is attempting in other ways to collect the assessment. The available methods of collection include distraint or proceedings in court. (As to tax liens and distraint proceedings, see Sections 3670 to 3672, Sections 3690 to 3712, and Section 276(c), 26 U.S.C.A. §§ 3670-3672, 3690-3712, 276(c).)

The question for decision is whether under the circumstances outlined above the District Court was powerless to give relief to the plaintiffs by restraining the tax authorities from enforcing the tax liabilities of the Duckworths and Sheltons againt Shelton, Jr. and the corporation. The District Judge was of the opinion that he was deprived of the power to enjoin the collection of the taxes by the broad provisions of Sec. 3653 of the I.R.C., which provides:

"§ 3653. Prohibition of suits to restrain assessment or collection

"(a) Tax. Except as provided in sections 272(a), 871(a) and 1012(a), no suit for the purpose of restraining

[1] The jeopardy assessment against Shelton, Jr. also included the sum of $10,243.27 assessed against Shelton, Sr. but Shelton, Jr. does not dispute the right of the government to assert liability for this sum against him as transferee of his father since he has received from his father a gift of $2,000 and 201 shares of stock of the corporation of the value of $20,100.

the assessment or collection of any tax shall be maintained in any court.

"(b) *Liability of transferee or fiduciary.* No suit shall be maintained in any court for the purpose of restraining the assessment or collection of (1) the amount of the liability, at law or in equity, of a transferee of property of a taxpayer in respect of any income, war-profits, excess-profits, or estate tax, (2) the amount of the liability, at law or in equity, of a transferee of property of a donor in respect of any gift tax, or (3) the amount of the liability of a fiduciary under section 3467 of the Revised Statutes (U.S.C., Title 31, § 192) in respect of any such tax."

█ We think that this holding should not be sustained since the circumstances clearly bring the cases within the rule established by the Supreme Court in Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422, and by subsequent decisions that Sec. 3653 is general in its terms and should not be construed as abrogating the equitable principles which permit suits to restrain collection where the exaction is illegal and there exist special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisdiction.

█ It may be noted, at the outset, that the broad prohibition of Sec. 3653(a) against the maintenance of any suit to restrain the collection of any taxes is directed at the person liable for the taxes and is not intended to preclude the courts from affording protection to one not liable to the taxes whose property may be in danger of seizure and sale by the taxing authorities. See Tower Production Co. v. Jones, D.C.Okl., 45 F.Supp. 593; Id., 10 Cir., 138 F.2d 675; Tower Production Co. v. U. S., 61 F.Supp. 411; Id., 3 Cir., 153 F.2d 304; National Iron Bank v. Manning, D.C., 76 F.Supp. 841; Adler v. Nicholas, 10 Cir., 166 F.2d 674; Hubbard Investment Co. v. Brast, 4 Cir., 59 F.2d 709.

█ The right to proceed against a transferee of the taxpayer conferred by Sec. 311, I.R.C., and the prohibition against suits to restrain the assessment or collection of the liability of the transferee set out in Sec. 3653(b) do not give the government any greater rights against the transferee or restrict the power of the courts to any greater extent than would be the case if the taxpayer himself were involved. Indeed, in the pending cases, the government confronts the difficulty that the plaintiffs, by the admitted facts, are not transferees of the taxpayer within the meaning of the statute. It has been uniformly held by the Tax Court that the mere distribution of assets does not of itself impose transferee liability upon the distributee because a transferee is one who takes the property of another without full, fair and adequate consideration; and regardless of what the transferor may owe, the liability of the transferee is limited to the value of the property which he has received without paying compensation therefor. See Leetonia Furnace Co., 23 B.T.A. 979, 987; Lehigh Valley Trust Company, Executor, 34 B.T.A. 528, 534; Burdick v. Commissioner, 24 B.T.A. 1297, 1304. The kind of transferee that Congress had in mind in these statutes is indicated by the provision of Sec. 311(f), entitled "Definition of 'transferee'" that, as used in the Section, the term includes heirs, legatees, devisees and distributees, or in other words, those who receive the bounty of another without compensation.

█ To the same effect are the decisions of the Courts of Appeals. They demonstrate that Sec. 311 was intended to provide the United States with a new remedy for enforcing the existing liability of a transferee in law or in equity which had formerly been the subject of court proceedings, where fraudulent or voluntary transfers had been received from a taxpayer in spite of the taxpayer's unpaid tax obligations; but that the statute did not change the conditions under which the liability of the transferee arises; and hence it is still true that one cannot be rendered liable as a transferee because he has received property from a taxpayer, without a showing that in law or in equity he is bound to pay the taxpayer's obligations. Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289; West Texas Refining & D. Co. v.

C. I. R., 10 Cir., 68 F.2d 77; American Equitable Assur. Co. of N. Y. v. Helvering, 2 Cir., 68 F.2d 46; Rubel v. Commissioner, 6 Cir. 74 F.2d 27; Botz v. Helvering, 8 Cir., 134 F.2d 538; U. S. v. Kensington Shipyard & Drydock Corp., 3 Cir., 187 F.2d 709.

■ These decisions are pertinent here, for it is conceded by the motion of the Collector to dismiss the complaints that the taxes which he seeks to collect from the proceeds of the plaintiffs' properties are the obligations of Duckworth and Shelton, Sr. and not of the plaintiff; and that Shelton, Jr. has received nothing from Duckworth and the corporation has received nothing from either Duckworth or Shelton, Sr. for which full value was not paid. The unjust and arbitrary character of the exaction is therefore manifest; and when we also take into consideration that the tax claims far exceed in amount the net worth of the plaintiffs and that the seizure and sale of the other properties would ruin them financially and inflict a loss from which they have no adequate remedy at law, we have no difficulty in finding the special and extraordinary circumstances which take the transferees out of the scope of the prohibitory statute and justify relief in a court of equity.

■■ It is manifest that the plaintiffs are not afforded an adequate remedy at law through the two alternative methods of judicial review available to them, that is, to permit their properties to be sold and then sue in the courts for recovery, or to appeal to the Tax Court from the Commissioner's determination of liability, since the losses consequent upon the interference with their business and the forced sale of their properties would be irreparable. It is equally clear that one whose entire property has been seized or subjected to a lien is not in a position to make use of the additional remedy offered by Sec. 273(f) of the I.R.C. under which he may stay the collection of the assessment by filing a bond in such an amount not exceeding double the amount of the assessment and with such sureties as the Collector deems necessary, conditioned upon the payment of so much of the taxes as may ultimately be found to be due. In this connection see the opinion of this Court, Yoke, Collector, v. Mazzello, 202 F.2d 508.

■ It may be added that this interpretation of the statutes does not leave the Government without protection against unscrupulous evaders of income taxes because the issuance of an injunction against the Collector pending the determination of the merits of his claim does not interfere with the tax lien which, as in the pending case, may be imposed upon the transferee's property.

The liberal interpretation of the statute in favor of the taxpayer which is indicated in Miller v. Standard Nut Margarine Co. of Florida, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422, has been applied in many cases in which the courts have found special and extraordinary circumstances justifying interferences of a court of equity.

Thus, the taxpayer has been allowed to enjoin collection of tax in Miller v. Standard Nut Margarine Co. of Florida, supra; Midwest Haulers v. Brady, 6 Cir., 128 F.2d 496; John M. Hirst & Co. v. Gentsch, 6 Cir., 133 F.2d 247; Mazzella v. Yoke, D.C.W.Va., 70 F.Supp. 462; Leonardi v. Goldberg, D.C.N.J., 76 F.Supp. 747. Compare Concentrate Mfg. Co. v. Higgins, 2 Cir., 90 F.2d 439; Burke v. Mingori, 10 Cir., 128 F.2d 996; Matcovich v. Nickell, 9 Cir., 134 F.2d 837; Sturgeon v. Schuster, 10 Cir., 158 F.2d 811, and Stradley v. Glenn, D.C.Ky., 95 F.Supp. 270, where taxpayers were denied relief because of insufficient showing of exceptional circumstances.

Likewise, transferees have been granted injunctive relief against the Collector in Trinacia Real Estate Co. v. Clarke, D.C. N.D.N.Y., 34 F.2d 325, and Rosenthal v. Allen, D.C.M.D.Ga., 75 F.Supp. 879. Relief was denied for want of equity in Felland v. Wilkinson, D.C.W.D.Wis., 33 F.2d 961, and Thomas v. McDonald, D.C.M.D. Pa., 33 F.Supp. 571.

The order of the District Court is therefore reversed and the cause remanded for further proceedings.

Reversed and remanded.