**MILLIKEN et al.**

v.

**GILL, Director of Internal Revenue et al.**

No. 6748.

United States Court of Appeals,
Fourth Circuit.

Argued March 19, 1954.

Decided April 5, 1954.

Kenneth D. Thomas, Hickory, N. C., for appellants.

Frederick G. Rita, Sp. Asst. to the Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to the Atty. Gen., and Bryce R. Holt, U. S. Atty., Greensboro, N. C., on the brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal by Mitchell S. Milliken and his wife Dorothy Milliken from an order dissolving a temporary restraining order and dismissing a suit instituted to enjoin the sale of certain personal property levied upon to collect a jeopardy assessment of federal income taxes. The court held that the suit was one to restrain the collection of internal revenue taxes within the prohibition of 26 U.S.C. § 3653 and that there were no such special circumstances as would bring it within the doctrine laid down by this court in Shelton v. Gill, 4 Cir., 202 F.2d 503. We think that this was correct.

The facts as shown by the pleadings and affidavits filed with the District Court are that on June 11, 1952 a jeopardy assessment on account of a deficiency in income taxes was made against appellants amounting with penalties and interest to the sum of $82,625 and on June 16, 1952 the assessment was levied on property of the appellants. On August 4, 1952 the deficiency with penalties and interest was determined to be $105,216.55, and appellants on October 27, 1952 filed petitions for review of these assessments with the Tax Court of the United States, where the petitions are still pending.

Following the levy upon the property of appellants the Director of Internal Revenue permitted them to continue the operation of coin operated music and amusement machines, cigarette machines and penny scales from which the chief portion of their income was derived. For a period of about three months, agents of the Director, holding keys to the machines, collected therefrom a sum in excess of $3,300 which was applied on tax liability. Since September 26, 1952, appellants have been allowed to operate the business with a view of keeping it a going concern pending the final determination of tax liability in the Tax Court. The Director offered to accept from appellants bond in the sum of $60,000 for the release of personal property from the lien of the attachment pending action by the Tax Court, but appellants were unable to give this bond. On September 27, he agreed that he would submit to the Commissioner a proposal of appellants to pay $30,000 for release of a part of the property and did submit the proposal which was accepted in January 1953, but appellants were unable to comply, because in the meantime the State of North Carolina had perfected liens upon the property which rendered it impossible to secure a loan which had been promised them by a bank in connection with the proposal submitted.

On April 1, 1953, the Director seized under the levy of the jeopardy assessment certain used music and amusement coin operated machines, which were not in operation, having an estimated value of $1,700, and three automobiles, having an estimated value of $4,200, one or more of which belonged to Mrs. Milliken. The machines in operation and two trucks used in operating them were not seized. The Director was proceeding with the sale of the property seized when he was stopped by the restraining order issued herein. In dissolving the restraining order and dismissing the suit the judge below quotes the affidavit of the Director that the total value of the property proposed to be sold will not exceed $6,000, whereas the joint liability of appellants for the single year 1950, where no transferee liability is involved, exceeds $12,000, of which only $1,259.97 has been collected.

There are contentions on the part of appellants that they do not owe the tax or certainly so large an amount as has been assessed against them, and that the proceedings against them have been inspired by their enemies, and on the part of the Director that they owe the tax and have refused to cooperate with the tax agents in determining the correct amount of their liability. We need not go into these contentions, however, as we think that without regard to what the facts there may be, the action of the trial judge was correct.

It is expressly provided by statute that, with certain exceptions not

here relevant "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court". 26 U.S.C. § 3653(a). There is the same prohibition on suit with respect to restraining the assessment or collection of "the liability, at law or in equity, of a transferee of property of a taxpayer". 26 U.S.C. § 3653(b). Subsection (a) of this section of the Internal Revenue Code is derived from R.S. § 3224, the underlying philosophy of which is set forth in, In re State Railroad Tax Cases, 92 U.S. 575, 613, 23 L.Ed. 663, where the Supreme Court said:

"The government of the United States has provided, both in the customs and in the internal revenue, a complete system of corrective justice in regard to all taxes imposed by the general government, which in both branches is founded upon the idea of appeals within the executive departments. If the party aggrieved does not obtain satisfaction in this mode, there are provisions for recovering the tax after it has been paid, by suit against the collecting officer. But there is no place in this system for an application to a court of justice until after the money is paid.

"That there might be no misunderstanding of the universality of this principle, it was expressly enacted, in 1867, that 'no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court.' Rev. Stat. sect. 3224. And though this was intended to apply alone to taxes levied by the United States, it shows the sense of Congress of the evils to be feared if courts of justice could, *in any case,* interfere with the process of collecting the taxes on which the government depends for its continued existence. It is a wise policy. It is founded in the simple philosophy derived from the experience of ages, that the payment of taxes has to be enforced by summary and stringent means against

a reluctant and often adverse sentiment; and to do this successfully, other instrumentalities and other modes of procedure are necessary, than those which belong to courts of justice."

The same philosophy has been applied with respect to suits to restrain the assessment or collection of transferee liability. In Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 595–596, 51 S.Ct. 608, 611, 75 L.Ed. 1289, the Supreme Court, in holding that, because of the statutory provision, no such suits could be maintained, said:

"The right of the United States to collect its internal revenue by summary administrative proceedings has long been settled. Where, as here, adequate opportunity is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained. Compare Cheatham v. United States, 92 U.S. 85, 88–89, 23 L.Ed. 561; Springer v. United States, 102 U.S. 586, 594, 26 L. Ed. 253; Hagar v. Reclamation District No. 108, 111 U.S. 701, 708–709, 4 S.Ct. 663, 28 L.Ed. 569. Property rights must yield provisionally to governmental need. Thus, while protection of life and liberty from administrative action alleged to be illegal may be obtained promptly by the writ of habeas corpus, United States v. Woo Jan, 245 U.S. 552, 38 S.Ct. 207, 62 L.Ed. 466; Ng Fung Ho v. White, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938, the statutory prohibition of any 'suit for the purpose of restraining the assessment or collection of any tax' postpones redress for the alleged invasion of property rights if the exaction is made under color of their offices by revenue officers charged with the general authority to assess and collect the revenue. Snyder v. Marks, 109 U.S. 189, 3 S.Ct. 157, 27 L.Ed. 901; Dodge v. Osborn, 240 U.S. 118, 36

S.Ct. 275, 60 L.Ed. 557; Graham v. du Pont, 262 U.S. 234, 43 S.Ct. 567, 67 L.Ed. 965. This prohibition of injunctive relief is applicable in the case of summary proceedings against a transferee. Act of May 29, 1928, c. 852, § 604, 45 Stat. 791, 873".

As pointed out by the Supreme Court in a note to the opinion in the last cited case, 283 U.S. at page 596 note 6, 51 S.Ct. at page 611, there is no substantial relaxation of this principle in the provision that, while an appeal is pending before the Tax Court, no proceeding by distraint may be taken, and, notwithstanding 26 U.S.C. § 3653, such proceeding may be enjoined. "For even in such case, if the commissioner believes the assessment or collection of the tax will be endangered by delay, he may make an immediate jeopardy assessment and collect by distraint unless the taxpayer files a bond. * * * The paramount right of the United States to require immediate payment, or surety therefor, is not diminished". The procedure followed in the case before us was that here pointed out as proper.

See also White Packing Co. v. Robertson, 4 Cir., 89 F.2d 775; Harvey v. Early, 4 Cir., 160 F.2d 836; Herwig v. Crenshaw, 4 Cir., 188 F.2d 572; Burke v. Mingori, 10 Cir., 128 F.2d 996.

■ Injunction may be granted, notwithstanding the statutory provisions, in a case apparently within its terms, "in which some extraordinary and entirely exceptional circumstances make its provisions inapplicable". Hill v. Wallace, 259 U.S. 44, 42 S.Ct. 453, 456, 66 L.Ed. 822. Thus, in the case cited, injunctive relief was granted restraining the collection of an unconstitutional Grain Future Trading Tax, since it would be impractical for brokers to pay the tax thereby imposed on each separate sale of grain and then bring suit to recover the payment. In Miller v. Standard Nut Margarine Co. of Florida, 284 U.S. 498, 510–511, 52 S.Ct. 260, 263, 76 L.Ed. 422, an injunction was upheld to restrain the collection of the oleomargarine tax on the sale of a product to which it did not apply, the court saying:

"This is not a case in which the injunction is sought upon the mere ground of illegality because of error in the amount of the tax. The article is not covered by the act. A valid oleomargarine tax could by no legal possibility have been assessed against respondent, and therefore the reasons underlying § 3224 apply, if at all, with little force. LeRoy v. East Saginaw [City] Ry. Co., 18 Mich. 233, 238–239. Kissinger v. Bean [14], Fed.Cas. [page 689], No. 7,853 [7 Biss. 60]. Respondent commenced business after the product it proposed to make had repeatedly been determined by the Commissioner and adjudged in courts not to be oleomargarine or taxable under the act and upon the assurance from the Bureau that its product would not be taxed. For more than a year and a half respondent sold its product relying [upon the aforesaid rulings] that it was not subject to tax. If required to pay the tax, its loss would be seven cents per pound. Before the Commissioner's latest ruling, respondent had made and sold so much that the tax would have amounted to more than it could pay. Petitioner acquiesced in the injunctions granted in Rhode Island and the District of Columbia and did not assess any tax upon identical products contemporaneously being made by complainants in such suits, and directed enforcement against respondent's entire product. Such discrimination conflicts with the principle underlying the constitutional provision directing that excises laid by Congress shall be uniform throughout the United States. It requires no elaboration of the facts found to show that the enforcement of the act against respondent would be arbitrary and oppressive, would destroy its business, ruin it financially, and inflict loss for which it would have

no remedy at law. It is clear that, by reason of the special and extraordinary facts and circumstances, section 3224 does not apply."

In Yoke v. Mazzello, 4 Cir., 202 F.2d 508, 509–510, this court sustained an injunction in a case where a jeopardy assessment had been levied and the Collector refused to accept a bond with personal sureties owning unincumbered real estate worth in excess of double the amount of the assessment, and refused to accept anything but a corporate bond. The court held this an abuse of discretion which brought the case within the class of extraordinary and exceptional circumstances. The court speaking through Judge Soper said in that case:

"The terms of the statute taken literally would control the decision, but it has been construed by the courts to admit of exceptions other than those specified, and injunctions to stay the collection of taxes have been granted under special and extraordinary circumstances which were deemed sufficient to bring the case 'within some acknowledged head of equity jurisprudence'. Miller v. Standard Nut Margarine Co. of Fla., 284 U.S. 498, 52 S.Ct. 260, 263, 76 L.Ed. 422. This course has been followed in situations of dire necessity where it was believed that the assessment was clearly unlawful, or was levied against the wrong person, and the enforcement of the tax would inflict an irreparable loss upon the complainant; and in some instances an injunction has been granted under circumstances not unlike those described in the complaint in the pending case."

Shelton v. Gill, 4 Cir., 202 F.2d 503, particularly relied on by appellant, is another case where "extraordinary and entirely exceptional circumstances" justified the granting of an injunction. In that case a jeopardy assessment had been levied on property of a person and a corporation as transferees; but they were held by the court not to be trans-ferees at all within the meaning of the statute but purchasers for value of the property who were in no way liable for the obligations of the persons against whom the taxes had been assessed. The court held that this fact, together with the fact that the losses which would result from the interference with business and the forced sale of the property were irreparable and no adequate remedy at law existed, brought the case within the "extraordinary and special circumstances" rule. That case manifestly has no application to either of appellants. If it be argued that property of Mrs. Milliken is being levied on for taxes due by her husband, the answer is that the value of all the property which is about to be sold is only about half of the tax for the year 1950, as to which no transferee liability is involved and which has been assessed against her as well as against her husband.

■■ The case before us has none of the "extraordinary and exceptional circumstances" necessary to take it outside the prohibition of the statute, but is an ordinary case of a jeopardy assessment against taxpayers who have failed to properly return their income for taxation, where the Commissioner believes that the collection of the deficiency will be jeopardized by delay. Neither the fact that appellants claim that they do not owe the tax, nor that it has been illegally and improperly assessed against them is any ground for granting the injunction, nor is the fact that the collection of the tax will result in hardship, nor that they failed to secure the loan to make the $30,000 payment as a result of delay on the part of government officials. The collection of the revenues of the government would be greatly interfered with if injunctions were to issue on any such grounds; and it was the clear purpose of 26 U.S.C. § 3653 to prevent this from happening.

For the reasons stated, the order of dismissal will be affirmed.

Affirmed.