**Benjamin LASSOFF and Irene Lassoff, Plaintiffs,**

**v.**

**William M. GRAY, etc., Defendant.**

**Myron DECKELBAUM and Dorothy Deckelbaum, Plaintiffs,**

**v.**

**William M. GRAY, etc., Defendant.**

**Robert LASSOFF, Plaintiff,**

**v.**

**William M. GRAY, etc., Defendant.**

**Civ. A. Nos. 3626, 3635, 3636.**

United States District Court
W. D. Kentucky,
at Louisville.

July 5, 1962.

Daniel W. Daviess, Newport, Ky., for plaintiffs.

William E. Scent, U. S. Atty., Louisville, Ky., for defendant.

SHELBOURNE, District Judge.

The plaintiffs in the above styled actions seek to invoke the equity jurisdiction of this Court to restrain the District Director of Internal Revenue at Louisville, Kentucky, in the collection of wagering taxes which have been levied and assessed against them and for relief against liens imposed upon their property. The defendant filed motions to dismiss on the grounds that the Court lacked jurisdiction to grant the relief sought. Defendant's motions were sustained and the complaints were dismissed. Lassoff v. Gray, D.C., 168 F.Supp. 363.

On plaintiffs' appeal, the Court of Appeals for the Sixth Circuit reversed the judgment of this Court and remanded the actions with directions that a hearing be held on the legality of the assessments and the existence of special and extraordinary circumstances warranting equitable relief notwithstanding the prohibition contained in Section 7421 of Title 26, United States Code, which provides that no suit for the purpose of restrain-

ing assessment or collection of any tax shall be maintained in any court. Lassoff v. Gray, 6 Cir., 266 F.2d 745.

In accordance with the mandate of the Court of Appeals, a trial of these consolidated actions was had before the Court, without the intervention of a jury, on June 5 and 6, continued to June 20 and concluded June 21, 1961.

Upon the testimony heard and the exhibits filed, the Court makes the following:

## FINDINGS OF FACT

1. April 19, 1956, Special Agents of the Internal Revenue Service, armed with a search warrant, forced entry into a three-story building located at 1045 Monmouth Street, Newport, Kentucky, owned by plaintiffs Benjamin Lassoff and Robert Lassoff, and conducted a raid. Certain papers, notes, and memoranda that evidenced the operation of a business of accepting wagers were seized.

2. Plaintiffs Benjamin Lassoff, Robert Lassoff, and Myron Deckelbaum and Simon Klayman, who were found in a room on the second floor of the building during the raid, were subsequently indicted by the grand jury of the United States District Court for the Eastern District of Kentucky at Covington on a charge of conspiring to willfully attempt to evade a federal tax and for doing acts making them liable for such taxes without having paid them. The criminal charges were dismissed following Judge Swinford's determination that the warrant for search of premises was invalid and the search conducted April 19, 1956, unlawful, so as to require suppression of the evidence so obtained. United States v. Lassoff, D. C., 147 F.Supp. 944.

3. September 12, 1956, a joint and several jeopardy assessment of excise wagering taxes was made against Benjamin Lassoff, Robert Lassoff, Myron Deckelbaum, and Simon Klayman as follows:

| Period | Tax | Penalty | Interest | Total Assessment |
|---|---|---|---|---|
| March, 1956 | $94,027.50 | $94,027.50 | $2,204.94 | $190,259.94 |
| April, 1956 | 54,499.50 | 54,499.50 | 1,005.52 | 110,004.52 |
| | | | | $300,264.46 |

4. As shown by the assessment levied, the Internal Revenue Service determined that the three plaintiffs and Simon Klayman accepted wagers in the amount of $940,275.00 during March, 1956, and $544,995.00 during the period April 1 to April 19, 1956, for a total of $1,485,270.-00. The defendant admits that the amount of taxes allegedly due was calculated from records seized in the raid on April 19, 1956, and that without those records the tax liability could not have been calculated.

5. September 13, 1956, a Form 17, notice and demand for payment of the assessment set out above, was issued to each of the plaintiffs. September 14, 1956, notices of federal tax liens in the amount of $300,264.46 were duly recorded in Hamilton County, Ohio and Campbell County, Kentucky with respect to property of each plaintiff.

6. Each of the plaintiffs have substantial property but it is inadequate to enable them to make bond or to pay the tax in full and file suit to recover a refund.

7. There is no admissible evidence to establish that plaintiffs were engaged in the business of accepting wagers and thus liable for the tax imposed by Section 4401 of Title 26, United States Code.

8. The plaintiffs' contention that they were each engaged in the business of handicapping sporting events, principally horse racing and baseball, and not in the business of accepting wagers is re-

futed by the testimony of the Special Agents of the Internal Revenue Service.

## CONCLUSIONS OF LAW

In reversing the judgment of dismissal in these actions and remanding for further proceedings, Lassoff v. Gray, 6 Cir., 266 F.2d 745, 747, the Court said:

> "Here we have three cases in which the parties will be denied a remedy unless and except they be afforded a hearing upon their complaints for injunction. It is true that if upon such hearing the alleged illegality and special and extraordinary circumstances do not in fact both exist then the restraint imposed by Section 7421(a) Internal Revenue Code of 1954 would apply, and the complaints would be dismissed, but we do not think that they should be dismissed without a hearing."

■ In order to come within the equity jurisdiction of this Court, plaintiffs must show *both* that the tax sought to be enjoined was illegally levied and the existence of special and extraordinary circumstances which would require equity to intervene. Hill v. Wallace, 259 U.S. 44, 62, 42 S.Ct. 453, 66 L.Ed. 822; Miller v. Standard Nut Margarine Co., 284 U.S. 498, 509, 52 S.Ct. 23, 76 L.Ed. 517; Midwest Haulers v. Brady, 6 Cir., 128 F.2d 496; John M. Hirst & Co. v. Gentsch, 6 Cir., 133 F.2d 247; Shelton v. Gill, 4 Cir., 202 F.2d 503.

■ Plaintiffs have each denied being engaged in the business of accepting wagers and, therefore, contend they are not liable for the tax imposed by Section 4401. Defendant's contention that plaintiffs were engaged in the business of accepting wagers is based upon the testimony of Special Agents of the Internal Revenue Service who conducted the raid at 1045 Monmouth Street on April 19, 1956. At the trial plaintiffs objected to the admissibility of evidence obtained during the raid because of Judge Swinford's ruling in United States v. Lassoff, supra. The Court reserved ruling on plaintiffs' objections and permitted the agents to testify.

The assessments were admittedly based upon information obtained during the search which Judge Swinford determined was unlawful. For this reason, plaintiffs allege that the assessments were illegal. However, defendant contends that, since these actions are civil in nature, the prohibition against the use of evidence obtained through an illegal search and seizure does not apply.

Although the Supreme Court has not specifically held that illegally obtained evidence is inadmissible in a civil case, statements in certain of its opinions are adaptable to the conclusion that such evidence may be considered inadmissible in civil cases.

In Weeks v. United States, 232 U.S. 383, 391, 34 S.Ct. 341, 58 L.Ed. 652, holding that illegally obtained evidence was not admissible in a criminal action, the Supreme Court said:

> "The effect of the Fourth Amendment is to put the courts of the United States and Federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers and effects against all unreasonable searches and seizures under the guise of law. *This protection reaches all alike, whether accused of crime or not, and the duty of giving it force and effect is obligatory upon all entrusted under our Federal system with the enforcement of the laws.*" (Emphasis added.)

The case of Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, arose out of an illegal search and the seizure of records of a corporation while two of its officers who had been indicted were being detained following their arrest. Photographs and copies of material papers were made and a new indictment was framed based upon the knowledge thus obtained. Application was made for the return of the records unlawfully taken and the District Court ordered the originals returned but

impounded the photographs and copies. Subpoenas to produce the originals then were served and the District Court ordered the defendants to comply, although it had previously found that all of the papers had been seized in violation of the parties' constitutional rights. At pages 391 and 392, 40 S.Ct. at pages 182, 183 of its opinion reversing the order of the District Court, the Supreme Court said:

"The Government now, while in form repudiating and condemning the illegal seizure, seeks to maintain its right to avail itself of the knowledge obtained by that means which otherwise it would not have had.

\* \* \* \* \* \*

"The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that *it shall not be used at all.* Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it in the way proposed." (Emphasis added.)

In Rogers v. United States, 1 Cir., 97 F.2d 691, 692, a civil action to recover customs duties on imported liquors, the Silverthorne case was relied on in holding that the admission of evidence obtained under a search warrant illegally issued was reversible error. The Court of Appeals said:

"The first assignment of error relates to the admission of certain evidence obtained by government officials as the result of an unlawful search of the defendant's premises and the seizure of merchandise (liquors) there found. Application for the return of the seized property having been seasonably made, the District Court, in that proceeding, held that the search warrant was illegally issued and ordered the prop-

erty seized returned to the defendant, which was done. Thereafter the government brought this action against the defendant to recover the customs duties above stated, and in support of its case was allowed to introduce evidence, much of which had been thus illegally obtained. The defendant objected to its admission on this ground. The District Court ruled that the evidence was admissible; that this is a suit of a 'civil nature \* \* \*, and that such evidence is admissible in a civil suit,' though not in a criminal one, and the defendant excepted.

\* \* \* \* \* \*

"If a writ of subpoena is rendered invalid because of the use in framing it of evidence obtained by the government in violation of the Fourth Amendment, we think that a judgment in a civil cause, in the procurement of which evidence thus illegally obtained is used, is likewise rendered invalid."

The case of Schenck ex rel. Chow Fook Hong v. Ward, D.C.Mass., 24 F.Supp. 776, involved a hearing conducted by immigration authorities at which certain illegally obtained evidence was introduced. Commenting on the use of this evidence, the Court said:

"It is well settled that aliens while in the United States are entitled to the protection of the Constitution and evidence obtained by the government in violation of a person's rights secured by the Fourth Amendment is not admissible against him in criminal proceedings. *This principle of law has been extended to civil cases as well.*" (Citing cases.) (Emphasis added.)

In Ex parte Jackson, D.C.Mont., 263 F. 110, an unlawful raid produced certain pamphlets that were used as evidence in a deportation proceeding. The Court held this evidence to be inadmissible, stating:

"(I)t is believed the deportation proceedings are unfair and invalid,

in that they are based upon evidence and procedure that violate the search and seizure and due process clauses of the Constitution."

Tovar v. Jarecki, D.C.Ill., 83 F.Supp. 47, was an action to enjoin the collection of a special marihuana tax. The District Court had previously suppressed certain evidence in a criminal proceeding. In denying injunctive relief, the District Court said:

"If, as plaintiff contends, the assessment here had been based solely upon evidence, obtained by the Government by the unlawful search and seizure, and which evidence was before the court in the case of United States v. Tovar, No. 47CR359, the court is of the opinion that it would be required to hold the tax illegal and grant the relief prayed. (Citing cases.)

\* \* \* \* \* \*

"The plaintiff has failed to prove that the officer who made the assessment acted upon evidence which this court ordered suppressed. Accordingly, the plaintiff cannot prevail."

On plaintiff's appeal, the judgment of the District Court was reversed and the action remanded. Tovar v. Jarecki, 7 Cir., 173 F.2d 449. The Court of Appeals held that the injunction should have been granted and concurred in the District Court's opinion that the assessment was a "penalty" and not a "tax". One year later, the Supreme Court held that a similar assessment was a "tax". United States v. Sanchez, 340 U.S. 42, 71 S.Ct. 108, 95 L.Ed. 47.

The defendant's contention that the Tovar case is not applicable here, since the assessment in that case was treated by the courts as a penalty, overlooks the fact that of the $300,264.46 assessed, $148,527.00 is clearly labeled as a penalty.

■ The exclusion of the evidence obtained in the raid on April 19, 1956, which Judge Swinford held to be an unlawful search, leaves this Court without any evidence to uphold the validity of the assessment. Concerning the admissibility of this evidence, the defendant said:

"Unless this evidence is made available for use, the plaintiffs for all practical purposes may obtain absolute immunity for all times for the taxes assessed. The records involved are the only records from which the amount of the tax can be determined. Without them, the liability cannot be calculated."

Since the defendant cannot use the evidence illegally obtained directly, it is not permitted to bring it through the back door by means of a subpoena duces tecum. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; Silverthorne Lumber Co. v. United States, supra.

■ Defendant contends that plaintiffs are required to produce these records by virtue of Section 4423 of Title 26, United States Code, which provides:

"Notwithstanding section 7605 (b), the books of account of any person liable for tax under this chapter may be examined and inspected as frequently as may be needful for the enforcement of this chapter."

Before the provisions of Section 4423 may be applied here, it must be shown that the plaintiffs are liable for the tax imposed by Section 4401 or Section 4411. The defendant has failed to produce any witness to give admissible evidence that the plaintiffs, or any one of them, were engaged in the business of accepting wagers.

■ However, the evidence held to be inadmissible for the purpose of showing that the plaintiffs were engaged in the business of accepting wagers is admissible to impeach plaintiffs' testimony that they were not engaged in that business. Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503.

In the absence of admissible evidence to establish plaintiffs' liability for payment of excise wagering taxes imposed by Section 4401 and Section 4411, the Court concludes that the assessment of $300,-

264.46 against the plaintiffs was invalid and illegal.

■ The illegality of the assessment, in itself, is not sufficient grounds for granting injunctive relief against its collection. The plaintiffs must also show the existence of special and extraordinary circumstances which would require equity to intervene.

■ Plaintiffs contend that, although each of them has property of considerable value, such value is wholly insufficient to meet the alleged demands of the United States; that they are unable to accumulate sufficient assets to pay their respective claims or to provide bond or other undertaking to guarantee the payment of same; that if their property is seized and sold by the defendant they will suffer great and irreparable damage, and injury to estate and credit; that there is no ready market for the property at a fair and reasonable value, and if sold at forced sale said property will realize only a small part of its value.

Although the financial burden imposed upon each of the plaintiffs by levying the assessment, asserting the liens against his property, and requiring him to pay the tax and then file suit for a refund may constitute a hardship, it does not meet the requirements of special and extraordinary circumstances.

In Monge v. Smyth, 9 Cir., 229 F.2d 361, 366, the Court said:

"One is led by a reading of the transcript to be sympathetic with the predicament and straitened circumstances in which the enforcement of the collection of the tax places this aged and infirm taxpayer. But hardship to the taxpayer does not warrant injunctive relief.

"Attempt is made to make it appear that the taxing agencies have been overbearing and heartless in enforcing the collection of this tax, but it must not be overlooked that they are merely performing a duty, the omission to perform which would result in censure—particularly if inaction resulted in loss to the Government.

"The Internal Revenue Act provides for the distraint and sale of property as a means of enforcing collection. A public sale is provided, thus assuring realization of a fair value for the assets sold. The refunding provisions provide the taxpayer may recover all he pays if he does not owe the taxes. Since any wrong he suffers may be remedied by a money consideration a denial of an injunction does not work irreparable injury."

To the same effect are Shelton v. Gill, 4 Cir., 202 F.2d 503; Milliken v. Gill, 4 Cir., 211 F.2d 869; Lloyd v. Patterson, 5 Cir., 242 F.2d 742; Jewel Shop of Abbeville v. Pitts, 4 Cir., 218 F.2d 692; Dyer v. Gallagher, 6 Cir., 203 F.2d 477.

The term "hardship" implies that the aggrieved party can in fact, though not without difficulty, pay the assessment and then have recourse to a court of law. An inability to pay goes beyond that, as is pointed out in Tovar v. Jarecki, 7 Cir., 173 F.2d 449, 451, when the Court said:

"In its motion to dismiss, the Government assigned as a reason therefor that the plaintiff had an adequate remedy at law. In this case it is clear on the whole record that this laboring man, struggling to buy a cheap home that cost four thousand dollars, and which he had only half paid for, could not pay this tax of over seven thousand dollars and sue in normal course to recover. To insist upon such procedure is, as the District Court said, unrealistic."

The plaintiffs here testified that they do not have and cannot obtain sufficient funds to pay the total amount of the assessment and thus lay the necessary groundwork for a determination of their tax liability through suits for refund.

In Midwest Haulers v. Brady, 6 Cir., 128 F.2d 496, our Court of Appeals held that an allegation of irreparable injury to a taxpayer through a forced sale of his business, if proven, would be grounds

for equitable jurisdiction. In that case, it was proved that a loss of intangible assets would result from a forced sale of the plaintiff's business. See also John M. Hirst & Co. v. Gentsch, 6 Cir., 133 F. 2d 247.

The plaintiffs here introduced no proof that collection of the assessment would result in the forced sale or ruination of any business or the loss of intangible assets. Their claim of "unusual and extraordinary" circumstances is supported only by their statements that they are unable to pay the assessment and then file suit for refund.

At the trial of these cases, defendant filed a motion to dismiss on the ground that plaintiffs had an adequate remedy at law which would not require the payment of the assessment in full.

In Flora v. United States, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623, discussing excise taxes, the Supreme Court said:

"The Government suggests—and we agree—that excise tax deficiencies may be divisible into a tax on each transaction or event, and therefore present an entirely different problem with respect to the full payment rule. [362 U.S. 171, fn. 37(b), 80 S.Ct. 644].

\* \* \* \* \* \*

" \* \* \* excise tax assessments may be divisible into a tax on each transaction or event, so that the full-payment rule would probably require no more than payment of a small amount." 362 U.S. 175, fn. 38, 80 S.Ct. 646.

Under the teaching of the Flora case, which was decided after the Court of Appeals decision remanding these actions, a proper determination of plaintiffs' tax liability may be had by the payment of the excise tax on one alleged wager by each plaintiff and the filing of a timely claim for refund. In the event the claim for refund is denied, each of the principal plaintiffs could file suit for refund in a court of law. Steele v. United States, 8 Cir., 280 F.2d 89.

Plaintiffs contend that such a procedure would result in a multiplicity of suits. In Robique v. Lambert, D.C.La., 114 F.Supp. 305, affirmed 5 Cir., 214 F. 2d 3, an action seeking injunctive relief from an assessment of $250.00 on each of certain pinball machines, the Court said:

"Complainants' contention that failure to obtain injunctive relief will result in a multiplicity of suits, and that this is a special circumstance which will bring these cases within the exception to the rule, is also without merit. Several suits can hardly be called a multiplicity. As used in this connection the term means a great number. There is no reason to believe that numerous suits will be necessary to determine the question of the tax properly due on the machines in question. A single suit by each complainant is all that will be required."

The recent case of O'Neill v. United States, D.C.N.Y., 198 F.Supp. 367, decided October 10, 1961, presents a set of facts quite similar to those in the cases here. In order to determine his tax liability, plaintiff paid excise wagering taxes in the amount of $751.23 and filed suit for a refund; the Government filed a counterclaim in the amount of $64,598.40.

CONCLUSION

Although we conclude the assessment is illegal, the plaintiffs have failed to show the existence of special and extraordinary circumstances required to give equitable jurisdiction to this Court. Moreover, the Court is of opinion that the plaintiffs have an adequate remedy in a court of law. The complaint in each of the actions is dismissed and orders to that effect are entered.

SUPPLEMENTAL FINDINGS OF
FACT, CONCLUSIONS OF
LAW AND ORDER

Following the entry of the Order dismissing the Complaints herein and the filing of this Court's Memorandum on May 18, 1962, the defendant filed its

motion on May 25, 1962 that the findings of fact and conclusions of law contained in said Memorandum be amended. The plaintiffs have also filed a motion to strike certain portions of that Memorandum. This motion, however, was not filed within the ten days allowed by Rule 52(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., and defendant's counsel objects to the motion because it is untimely.

Both parties have discussed the recent case of Enochs v. Williams Packing & Navigation Co., Inc., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292. In that case the Supreme Court amplified the holding in Miller v. Standard Nut Margarine Company, 284 U.S. 498, 52 S.Ct. 23, 76 L.Ed. 517, thus:

"* * * if it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the Act [26 U.S.C. 7421 (a)] is inapplicable and, under the Nut Margarine case, the attempted collection may be enjoined if equity jurisdiction otherwise exists."

Then, the Court said:

"* * * the question of whether the Government has a chance of ultimately prevailing is to be determined on the basis of the information available to it at the time of suit. Only if it is then apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim, may the suit for injunction be maintained. Otherwise, the District Court is without jurisdiction, and the complaint must be dismissed. * * * Thus, in general, the Act prohibits suits for injunctions barring the collection of federal taxes 'when the [the collecting] officers * * * have made the ass[ess]ment and claim that it is valid'."

The assessment in this case was made on September 12, 1956. On the following day, the jeopardy warrant issued. January 14, 1957, for the first time, the search warrant under which the Government obtained the only basis upon which the amount of excise taxes claimed to be due could be calculated was nullified.

We have previously determined that there was no admissible evidence to show that the taxpayers were engaged in the business of accepting wagers. We cannot say, however, that, under the most liberal view of the law and the facts and from the information available to the Government at the time these suits for injunction were filed, June, 1958, it was clear that the Government could not ultimately prevail. Such a determination was, therefore, unnecessary for a decision in these cases.

The presumption of validity in favor of the assessment by the Commissioner casts the burden of proof of showing invalidity on the taxpayer. Such cases as United States v. Rindskopf, 105 U.S. 418, 26 L.Ed. 1131; Wickwire v. Reinecke, 275 U.S. 101, 48 S.Ct. 43, 72 L.Ed. 184; Commissioner of Internal Revenue v. Hansen, 360 U.S. 446, 468, 79 S.Ct. 1270, 3 L.Ed.2d 1360; Willkie v. Commissioner, 6 Cir., 127 F.2d 953; McGrew's Estate v. Commissioner, 6 Cir., 135 F.2d 158, 148 A.L.R. 1045; Frank v. Commissioner, 6 Cir., 226 F.2d 600; Harp v. Commissioner, 6 Cir., 263 F.2d 139, so hold.

However, in Kentucky Trust Company v. Glenn, 6 Cir., 217 F.2d 462, the Court decided that such presumption disappears upon the introduction of evidence to overcome it, citing New York Life Insurance Company v. Gamer, 303 U.S. 161, 58 S.Ct. 500, 82 L.Ed. 726; Del Vecchio v. Bowers, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229; and McGrew's Estate v. Commissioner, supra.

As the plaintiffs have not offered any credible evidence to show that they were not engaged in the business of accepting wagers, our former conclusion that the assessment was illegal and invalid was unwarranted. The burden of establishing invalidity was upon the plaintiffs.

The Government has admitted that the facts and figures upon which the monetary amount of the assessment was based were obtained as a result of the raid. So

much of the Memorandum as holds that this evidence is to be excluded leaves the defendant without any evidence to support its assessment as representing the correct amount of the tax liability and was a proper finding. The fact, however, that the amount of the assessment was based upon facts and figures unlawfully obtained is not, ipso facto, sufficient ground for granting injunctive relief against the collection of the tax.

WHEREFORE, IT IS ORDERED:

1. That plaintiffs' motion be and hereby is overruled.

2. That defendant's motion is sustained in the following respects:

a) Finding of fact Number 7 be and is hereby stricken.

b) Any findings or conclusions that the assessment was illegal be and the same are hereby stricken.