**NATIONAL BANK OF COMMERCE IN MEMPHIS, as Executor of the Estate of Frederick Smith, Deceased, Plaintiff,**

v.

**Lipe HENSLEE, Individually and as Collector of Internal Revenue for the District of Tennessee, Defendant.**

**Civ. A. No. 2090.**

United States District Court
M. D. Tennessee,
Nashville Division.

Oct. 22, 1959.

W. G. Boone, Memphis, Tenn., for plaintiff.

Charles K. Rice, Asst. Atty. Gen., Fred Elledge, Jr., U. S. Dist. Atty., Nashville, Tenn., for the Government.

WILLIAM E. MILLER, District Judge.

This is an action by the executor of the estate of Frederick Smith to recover $68,119.72, with interest, representing estate taxes paid by the estate to defendant. In issue is the includibility of a trust, hereinafter described as the Laura Ann Smith Trust, within the gross estate of Frederick Smith, deceased, for federal estate tax purposes.

The pertinent facts have been stipulated and may be summarized as follows:

Plaintiff is executor of the estate of Frederick Smith, hereinafter referred to as the decedent, who died testate, a resident of Memphis, Tennessee, on November 20, 1948. Defendant was at all times material herein Collector of Internal Revenue for the District of Tennessee.

On or before February 20, 1950, plaintiff filed with defendant a federal estate tax return for decedent's estate. The

return disclosed an estate tax liability of $113,609.10, which amount was timely paid by plaintiff to defendant. Subsequently, a deficiency of $94,384.86 in estate tax was assessed against the estate. This deficiency, together with interest thereon in the amount of $9,199.29, was paid by plaintiff to defendant on October 11, 1951. As a result of claims for refund and the allowance to plaintiff of a refund credit of $31,755.25, all matters in controversy between plaintiff and defendant were settled except the includibility in decedent's gross estate of the Laura Ann Smith Trust.

Laura Ann Smith was the daughter of the decedent. On May 3, 1940, decedent executed a trust instrument creating the Laura Ann Smith Trust and naming plaintiff as trustee. The trust was created for the benefit of Laura Ann Smith pursuant to an agreement between decedent and his wife, Charlotte Clark Smith. Under the terms of the agreement, which was made in contemplation of divorce proceedings to be instituted by Mrs. Smith, decedent was given custody and control of Laura Ann, and Mrs. Smith was given custody and control of their other daughter.

The assets of the trust estate and their respective values were as follows:

| | |
|---|---|
| 15,000 shares Greyhound Corporation stock | $159,300.00 |
| Cash on Hand | 11,022.66 |
| Real Estate | 36,000.00 |
| Total | $206,322.66 |

No gift tax return was filed nor was a gift tax paid with respect to the original transfer in trust.

When the Laura Ann Smith Trust was created on May 3, 1940, the decedent was 45 years of age and his daughter, Laura Ann Smith, was 5 years of age. According to the American Experience Tables of Mortality, the life expectancy of decedent at that time was 24.54 years and Laura Ann's life expectancy was 51.13 years. On November 20, 1948, when decedent died, he was 53 years of age and his daughter, Laura Ann, was 13 years old.

The provisions of the trust instrument which give rise to the present controversy are as follows:

"Until Laura Ann Smith shall attain the age of twenty-one years, the net income from the trust estate (or so much thereof as Frederick Smith, father of said beneficiary, may in his discretion deem necessary and proper) shall be paid by the Trustee at convenient intervals to Frederick Smith (if he be then living) for the support and maintenance of said Laura Ann Smith during her minority; and any portion of such net income not so paid out shall be reinvested by the Trustee, but such reinvested income shall not become part of the corpus of the trust estate, and shall remain subject to distribution in the same manner as other income of the trust estate. In the event of the death of Frederick Smith before such beneficiary shall attain the age of twenty-one years, the Trustee shall pay to the legal guardian of Laura Ann Smith, for the support and maintenance of such beneficiary, so much of the net income from the trust estate as the Trustee in its discretion may consider necessary, having due regard for the condition in life of said beneficiary. When Laura Ann Smith shall have attained the age of twenty-one years, the Trustee shall pay to said Laura Ann Smith, at convenient intervals, the entire net income from the trust estate, so long as she may live, unless this trust be revoked by the Settlor in the manner and within the times herein provided.

\* \* \* \* \* \*

"The Settlor specifically reserves and retains, and the Trustee acknowledges, the absolute right and power to revoke that trust herein created, by instrument in writing addressed to the Trustee; provided, however, such revocation shall only

be made either (1) within one year after the date on which Laura Ann Smith shall marry, if she shall marry prior to attaining the age of twenty-one years, or (2) within one year after Laura Ann Smith shall attain the age of twenty-one years. Failure of the Settlor to exercise such right and power of revocation within one year from and after such date of marriage of Laura Ann Smith, as aforesaid, shall not effect, constitute or be construed as a waiver or abandonment of the right and power of the Settlor to revoke such trust within one year from and after the date on which Laura Ann Smith shall attain the age of twenty-one years. In the event of the death of the Settlor, while such right and power of revocation shall still be vested in him, or in the event the Settlor shall not exercise such right and power of revocation in the manner and within the time or times as hereinabove provided, such right and power of revocation shall terminate and be of no further effect; and the Trustee shall in such event continue to hold the trust estate and to administer the same for the benefit of the beneficiaries hereinabove designated, and to pay the income and dispose of the principal of the trust estate as hereinabove set forth.

\* \* \* \* \* \*

"The Trustee shall have full power to sell, improve, exchange, convey, transfer, mortgage or otherwise encumber any real estate which may at any time form part of the trust estate, and shall have full power to insure and pay for insurance upon same, \* \* \* provided, however, the Trustee shall permit the beneficiary, Laura Ann Smith, and her father, Frederick Smith, and his immediate family to reside without cost to her or to her father, Frederick Smith, in those premises known as 527 East Parkway South, Memphis, Tennessee, if she or her father, Frederick Smith, shall desire

so long as such real estate shall continue to be a part of the trust estate.
\* \* \*

\* \* \* \* \* \*

"So long as the Settlor, Frederick Smith, shall live, the said Settlor shall have complete direction and control of the investment and/or reinvestment of the funds and property of the trust estate, and the Trustee shall hold or continue to hold in the said trust estate, or shall from time to time sell, or from time to time purchase, such property or securities as the said Frederick Smith may in writing direct;
\* \* \*."

It is defendant's theory that these reservations by the settlor bring the trust within reach of Section 811 of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A., the pertinent provisions of which are as follows:

"§ 811. Gross estate

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States

—

\* \* \* \* \* \*

"(c) [As amended by Sec. 7(a), Act of October 25, 1949, c. 720, 63 Stat. 891] *Transfers in Contemplation of, or Taking Effect at, Death.*—

"(1) *General rule.* To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

\* \* \* \* \* \*

"(B) Under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the

property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; or

"(C) intended to take effect in possession or enjoyment at or after his death.

\* \* \* \* \* \*

"(2) *Transfers taking effect at death—transfers prior to October 8, 1949.* An interest in property of which the decedent made a transfer, on or before October 7, 1949, intended to take effect in possession or enjoyment at or after his death shall not be included in his gross estate under paragraph (1) (C) of this subsection unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer and not by operation of law, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of the value of such property. For the purposes of this paragraph, the term 'reversionary interest' includes a possibility that property transferred by the decedent (A) may return to him or his estate, or (B) may be subject to a power of disposition by him, but such term does not include a possibility that the income alone from such property may return to him or become subject to a power of disposition by him.[1]
\* \* \* "

The stipulation and briefs have clarified the issues, and there are now before the Court two questions:

1. Is the trust includible under Sec. 811(c) (1) (B) as a transfer under which the settlor retained for his life or for a period which did not in fact end before his death (i) the possession and enjoyment of, or the right to the income from, the property, or (ii) the right to designate the person who shall possess and enjoy the property or the income therefrom?

2. Is the trust includible under Sec. 811(c) (1) (C), implemented by Sec. 811(c) (2), as a transfer intended to take effect in possession and enjoyment at or after the settlor's death?

An affirmative answer to either one of these two questions will, of course, result in a judgment for the defendant.

After considering the original briefs, the Court set the case down for oral argument. At the conclusion of the argument, the Court was primarily concerned with the applicability of subsection (c) (1) (C) and subsection (c) (2) which relate to transfers intended to take effect at or after the settlor's death. Subsection (c) (2) was brought into the Code by the Act of October 25, 1949, c. 720, 63 Stat. 891. These subsections were interpreted in Treasury Regulations 105, Sec. 81.17, as follows:

"A transfer of an interest in property made by the decedent prior to October 8, 1949, \* \* \* is not 'intended to take effect in possession or enjoyment at or after his death' unless possession or enjoyment of the transferred property can, through ownership of such interest, be obtained only by surviving the decedent."

Both parties rely upon authorities handed down prior to the enactment of subsection (c) (2) and the promulgation of the above quoted provision of the Regulations. In response to the Court's query as to whether this provision of the Regulations is a statement of the law as it existed prior to October 8, 1949, supplemental briefs were filed. Since it satisfactorily appears that the above Regulation was the law prior to October 8, 1949, and since it is clear in the in-

---

[1]. It is stipulated that the estate is not includible under Sec. 811(c) (1) (A), and it is stated in the "Brief for the Defendant" filed March 5, 1958, pp. 7–8, that defendant "is not attempting to include the trust property under Section 811(d)." This leaves for consideration the includibility of the trust under the above quoted provisions of Section 811.

stant case that possession or enjoyment of the transferred property could be obtained by the beneficiary of the trust without surviving the decedent, the Court has reached the conclusion that the transfer was not "intended to take effect in possession or enjoyment at or after (the decedent's) death" within the meaning of subsections (c) (1) (C) and (c) (2). It would serve no useful purpose to discuss this phase of the case further, as the Court concludes, for the reasons hereinafter stated, that the trust is includible in decedent's gross estate for federal estate tax purposes under Sec. 811(c) (1) (B).

Under this provision of the Code, the decedent's gross estate shall include the value of property:

"(c) (1) To the extent of any interest therein of which the decedent has at any time made a transfer, * * * by trust or otherwise—

* * * * * *

"(B) Under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, * * *."

A literal application of the words "for any period which does not in fact end before his death" would require that the Laura Ann Smith Trust be included, since the period for which the decedent retained the right to the income did not in fact end before his death. The statute is interpreted in Treasury Regulations 105, Sec. 81.18, as follows:

"Sec. 81.18. *Transfers with possession or enjoyment retained*

* * * * * *

"(a) Except in the case of a bona fide sale for an adequate and full consideration in money or money's worth, section 811(c) (1) (B) requires the inclusion in the gross estate of the value of all property transferred by the decedent, whether in trust or otherwise, if the decedent

retained or reserved the use, possession, right to the income, or other enjoyment of the transferred property (i) for his life; or (ii) for any period not ascertainable without reference to his death; or (iii) for such a period as to evidence his intention that it should extend at least for the duration of his life and his death occurs before the expiration of such period."

From the legislative history of the statute which has been discussed at length in the briefs, it appears to the Court that the intent of Congress is expressed in the above-quoted provisions of the Treasury Regulations. Committee Reports and Treasury Regulations indicate that a literal construction of the statute is not to be applied. The exact words "for any period which does not in fact end before his death" first appeared in the Revenue Code of 1932, § 803, 26 U.S.C.A. Int.Rev.Acts and were carried forward into the 1939 Code. The purpose of Congress in adding these words was stated in the Senate Finance Committee Report (1939–1 CB (Part 2) 532) as follows:

"(2) The insertion of the words 'or for any period which does not in fact end before his death,' which is to reach, for example, a transfer where decedent, 70 years old, reserves the income for an extended term of years and dies during the term, or where he is to have the income from and after the death of another person until his own death, and such other person predeceases him. This is a clarifying change and does not represent new matter."

The views of text writers support the proposition that the quoted words of the statute are subject to a degree of flexibility. Montgomery's Treatise on Federal Taxes (1934 Ed.) contains the following statement on the subject:

"The Treasury, evidently on the principle of saving the constitutionality of section 302(c), has not embodied in the regulations the statu-

tory phrase 'or for any period which does not in fact end before his death.' The reservation of an income for a short term of years by one in the full vigor of life could by no stretch of the imagination be construed as testamentary and the requisite intent, actual or constructive, could not reasonably be inferred. Whether the reservation is for a period of such duration as to evidence the grantor's intention to retain enjoyment of the property for his life will present the determinative question of fact."

CCH Federal Estate and Gift Tax Reporter, Vol. 1, Par. 1460.05, states:

"If the rights are retained for a specified period only, they will not result in tax unless the decedent dies within that period and the length of the period was such as to evidence his intention that it should extend at least for the duration of his life."

The same view is expressed in Lowndes and Kramer, Federal Estate and Gift Taxes, pp. 140–141.

If the Court is not permitted to apply the words "or for any period which does not in fact end before his death" literally, it is of the opinion nevertheless that the Laura Ann Smith Trust is includible under Sec. 811(c) (1) (B), as interpreted in Treasury Regulations 105, Sec. 81.18. In that connection the conclusion seems inescapable upon the facts of the present case in the light of the provisions of the trust instrument that the reservation of income by the decedent was "for such a period as to evidence his intention that it should extend at least for the duration of his life".

It is not disputed that a reservation of the right to have the trust income applied in the discharge of the settlor's legal obligation is equivalent to "retaining the right" to the income within the meaning of Sec. 811(c) (1) (B).[2]

It is difficult to find in the trust agreement a reservation of possession or enjoyment which the decedent omitted, except the right to vote the stock in the trust. The decedent retained:

1. The right to reside in the home, one of the transferred assets, having a value of $36,000, for his lifetime, with the taxes and upkeep to be paid from the trust.

2. The right to direct and control the investment and reinvestment of the trust assets.

3. The right to receive the income for use in the discharge of his continuing legal obligation to support his dependent child during her minority.

4. The right to revoke the trust and recover the entire estate the moment he ceased to receive the income.

At the time the trust was created, Laura Ann was 5 years of age. Thus, decedent retained the income for a maximum period of 16 years and the power to revoke the trust when his right to the income ended. We are not concerned here with probabilities that the decedent would or would not elect to revoke the trust after 16 years or at an earlier date if Laura Ann married. The effect of the trust instrument was to reserve to the decedent the right to receive the income from, or the use or enjoyment of, the property for his life unless he chose to surrender that right. The Court feels that such is the only reasonable construction of the trust agreement and was, in fact, the intention of the settlor.

In Helvering v. Mercantile-Commerce Bank & Trust Co., 8 Cir., 111 F.2d 224–226, certiorari denied 310 U.S. 654, 60 S.Ct. 1104, 84 L.Ed. 1418, the court stated:

"We think the result of the reservation by the settlor of the trust of the right to have the trust income applied in discharge of his continuing legal obligations [the main-

---

2. In plaintiff's original brief, it is stated (p. 2):
"There is no question but that income to be applied to discharge a legal obliga-

tion of a decedent is the equivalent of income retained by the decedent."

tenance and support of his wife] was equivalent to 'retaining the right' to that income * * *. Considering the context of Section 302, which imposes estate tax where the decedent has made a trust transfer of his property and 'has retained the right to the income from the property,' we think the words 'retained the right to the income' are used in the context to mean the opposite of 'surrendered the right to the income'. The trust income is treated of as an entity distinct from the corpus and the liability to estate tax is made to depend on whether the decedent has retained or surrendered his right to it."

It certainly could not be said that in the instant case the decedent surrendered his right to the income.

 One further insistence made at the conclusion of plaintiff's Second Supplemental Brief deserves comment. It is stated:

"In the event this court should hold the trust includable nevertheless the gross estate should not include under Sec. 811(i) the amount of the value of the right of Laura Ann Smith to support after Frederick Smith's death."

It is plaintiff's contention that decedent was required, under the terms of the settlement agreement between him and his wife, and as a part of the consideration therefor, to establish a trust to insure the support and maintenance of Laura Ann during her minority; that "the terms of the trust require the payment of the income for such support and maintenance and thus, to that extent, is a release of Frederick Smith from his legal obligation to support"; and that such release is a consideration in money or money's worth within the meaning of

Section 811(i) of the Internal Revenue Code of 1939, which is as follows:

"(i) Transfers for insufficient consideration. If any one of the transfers, trusts, interests, rights, or powers, enumerated and described in subsection (c), (d), and (f) is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent."

In support of this contention, plaintiff relies upon Estate of McKeon v. Commissioner, 25 T.C. 697, and the cases therein cited. The Court has considered the decisions in these cases and finds that they are not applicable to the facts in the present case. In Estate of McKeon v. Commissioner, and in four of the five cases cited therein,[3] the wife was given custody of the children, and the agreement or transfer in trust was for the purpose of providing income, to be paid to the wife, for the children's support. The decision in each case was predicated upon a finding that the agreement or transfer involved effected a release of the father from his legal obligation to support his minor children, and the court's holding was that such release was a consideration in money or money's worth. The fifth case cited in Estate of McKeon v. Commissioner[4] involved a gift tax assessed by the Commissioner of Internal Revenue. In that case the Commissioner conceded that a part of the fund was transferred for an adequate consideration represented by a discharge

---

3. D. G. McDonald's Trust, 19 T.C. 672, affirmed sub nom. Chase National Bank of City of New York Commissioner, 8 Cir., 225 F.2d 621; Estate of Eben B. Phillips, 36 B.T.A. 752; Roland M. Hook-er, 10 T.C. 388, affirmed 5 Cir., 174 F. 2d 863; Commissioner of Internal Revenue v. Weiser, 10 Cir., 113 F.2d 486.

4. Edmund C. Converse, 5 T.C. 1014, 1016, affirmed 2 Cir., 163 F.2d 131.

of the father's obligation to support his minor daughter.

In the case at bar, the facts are directly opposite. The decedent was given custody of the minor child, thereby continuing his legal obligation to support her. Neither the agreement between decedent and his wife nor the transfer in trust released or purported to release the decedent from that obligation.

The Court, therefore, finds that the transfer creating the Laura Ann Smith Trust was not made for a consideration in money or money's worth, within the meaning of Sec. 811(i), and that plaintiff's insistence in this respect is not well taken.

A judgment for defendant in conformity with this opinion will be submitted to the Court for approval.