Estate of Marie J. Nicol, Deceased, Nancy N. Davis, Executrix, Petitioner *v.* Commissioner of Internal Revenue, Respondent

Docket No. 3486–69.    Filed April 27, 1971.

*Leo Graybill, Jr.*, for the petitioner.
*Joe K. Gordon*, for the respondent.

Featherston, *Judge:* Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $9,807.74. The only issue presented for decision is whether the value of a parcel of farm property is includable in decedent's taxable estate under section 2036[1] where, under a lease agreement, she continued to receive rent after conveying the farm to her daughter.

#### FINDINGS OF FACT

Nancy N. Davis, petitioner, is the daughter and executrix of the estate of Marie J. Nicol, who died on September 28, 1965. Petitioner

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

was a resident of Geraldine, Mont., at the time she filed the petition. She filed an estate tax return with the district director of internal revenue, Helena, Mont.

On October 18, 1962, Marie J. Nicol (hereinafter decedent), who was then 77 years old, leased certain contiguous parcels of farmland which she owned in Chouteau County, Mont., to petitioner and petitioner's husband, Noah G. Davis (hereinafter Davis), for a period of 5 years, beginning on November 1, 1962, with an option to renew for an additional 3 years. Decedent agreed to pay all the property taxes, "one-third of the cost of fertilizer, spraying, Federal crop insurance and hail insurance pertaining to the farming and insuring of grain crops on said described premises" and, if reseeding was required, one-third of the cost of the seeds. In return, decedent was to receive "one-third ($\frac{1}{3}$) of all grain crops grown or to be grown" on the property. This was a standard rental agreement for property located in this geographic area.

The lease further provided that:

It is understood and agreed by the parties hereto that should Lessor convey any part of said described premises to Nancy G. Davis, one of the Lessees herein, nevertheless this Farm Lease shall be fully effective as to the farm premises, or any part thereof, so conveyed by Lessor to said Nancy G. Davis.[2]

On October 29, 1962, decedent conveyed one of the parcels covered by the above-described lease to petitioner. This parcel consisted of 640 acres, of which 288 were croplands having a value of $88.50 per acre. The remainder was grassland. The grazing land was of relatively poor quality, containing a considerable amount of gravel and outcroppings of rock; it had a value of $15 per acre. It is customary for such "noncrop" land to be included along with cultivated land leased on a crop-sharing basis without any additional rent.

After the transfer, Davis paid the property taxes on the land, and, as provided by the lease, he continued to pay the rent until decedent died.

Respondent determined that:

the value of 628 acres of improved farm land which had a value of $41,800.00 at date of death and which the decedent transfered to her daughter, Nancy N. Davis, on October 29, 1962, is includible in the gross estate under Section 2036 of the Internal Revenue Code, since the decedent, by virtue of a previously executed crop share lease agreement, reserved to herself the rental income from the property for a period which did not, in fact, end before her death.

OPINION

Under the terms of the 5-year lease of October 18, 1962, decedent was to be paid as rent the customary one-third of all grain crops

---

[2] The Nancy G. Davis mentioned in this lease is the same person as Nancy N. Davis, petitioner herein.

grown on the farm, even if she should later convey the property to her daughter. Even though decedent, shortly after signing the lease, transferred the farm to her daughter by a deed, absolute on its face, decedent continued to receive the rent provided in the lease until she died on September 28, 1965. We think these facts are sufficient to require the inclusion of the value of the farm in her taxable estate under section 2036(a)(1)[3] as a transfer of property under which decedent retained "the possession or enjoyment of, or the right to the income from, the property" for a period which did not in fact end before her death. *McNichol's Estate* v. *Commissioner*, 265 F. 2d 667 (C.A. 3, 1959), affirming 29 T.C. 1179 (1958), certiorari denied 361 U.S. 829 (1959); *Skinner's Estate* v. *United States*, 316 F. 2d 517 (C.A. 3, 1963).

Petitioner presents several arguments to support her view that section 2036(a)(1) does not apply. First, she contends that its heading, "TRANSFER WITH RETAINED LIFE ESTATE," shows that the section refers only to legal interests which constitute life estates under State law; under Montana law, according to the argument, decedent did not have a life estate in the farm and, indeed, had no legally enforceable interest therein. However, this heading of section 2036 was first adopted when the 1954 Code was enacted, and the committee reports declare that there was no intention to change the substance of the predecessor section 811(c)(1)(B) of the 1939 Code. H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p. A314; S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p. 469. While the language of the section heading may be used as an interpretative aid, it will not be so employed as to limit the meaning and purpose of the text. *Maguire* v. *Commissioner*, 313 U.S. 1 (1941); *Yoke* v. *Mazzello*, 202 F. 2d 508, 510-511 (C.A. 4, 1953); *Prudential Insurance Co. of America* v. *United States*, 319 F. 2d 161 (Ct. Cl. 1963); *John Bell Keeble, Jr.*, 2 T.C. 1249, 1252-1253 (1943).

Quite clearly, the text of section 2036 is not limited to life estates under State law. It refers to any donative transfer under which the decedent has retained the enjoyment of property during his lifetime, and reflects a "legislative policy of subjecting to tax all property which has been the subject of an incomplete [donative] *inter vivos* transfer."

---

[3] SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, * * *

*United States* v. *O'Malley*, 383 U.S. 627, 631 (1966). The section is designed to include in a decedent's taxable estate any property which has been transferred during the decedent's lifetime as a substitute for a testamentary disposition. *Comm'r.* v. *Estate of Church*, 335 U.S. 632 (1949).

In the present case, decedent continued to enjoy the fruits of ownership—the rental income from the property—for her lifetime; and her daughter, who was given legal title to the property, did not obtain the economic benefits of ownership until after decedent's death. Thus, as in the case of testamentary dispositions of property, the benefits of ownership did not pass from decedent until the time of her death. This is the kind of factual situation to which section 2036(a)(1) is intended to apply. See *McNichol's Estate* v. *Commissioner, supra; Skinner's Estate* v. *United States, supra; Greene* v. *United States*, 237 F. 2d 848 (C.A. 7, 1956); *Commissioner* v. *Wilder's Estate*, 118 F. 2d 281 (C.A. 5, 1941), reversing on another point a Memorandum Opinion of this Court, certiorari denied 314 U.S. 634 (1941).

While State law must be referred to for a definition of the legal interests of the parties, it does not limit the reach of section 2036 (a)(1). The application of the section does not depend upon the retention of a legally enforceable interest in the property. In *McNichol's Estate* v. *Commissioner, supra*, the decedent transferred property to his children, but, by virtue of a contemporaneous oral agreement with them, continued to receive the rents therefrom until his death. Similarly, in *Skinner's Estate* v. *United States, supra*, the decedent transferred property to her children without any express agreement that she was to receive the rent therefrom; but such an agreement was inferred by the court from all the facts and circumstances, including decedent's continued receipt of the rents. In each of these cases, the decedent's taxable estate included the value of the property even though it had been transferred by a deed, complete and absolute on its face. As stated by the Court of Appeals in *McNichol's Estate* v. *Commissioner, supra* at 671, "Enjoyment as used in * * * [section 2036(a)(1)] is not a term of art, but is synonymous with substantial present economic benefit." Decedent's retention of the right to the rent under the terms of the lease "for * * * [a] period which * * * [did] not in fact end before * * * [her] death" brings the farm within the broad sweep of section 2036(a).

The phrase "for any period which does not in fact end before his death," contained in section 2036(a), can be traced from the Joint Resolution of March 3, 1931, ch. 454, 46 Stat. 1516, when in response to *May* v. *Heiner*, 281 U.S. 238 (1930), Congress added a version of this language in an effort to insure that when a decedent transferred property, reserving its income for life, the value of the transferred

property would be included in his taxable estate. The wording of this predecessor to section 2036(a), as modified by the Revenue Act of 1932, provided, in material part, that the value of the decedent's estate shall include the value of all property—

To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property * * *. [Sec. 803, Revenue Act of 1932, 47 Stat. 169, 279.]

This language was adopted as section 811(c) of the 1939 Code, and was rearranged and modified in respects not material to this case by the Revenue Act of 1949. H. Rept. No. 1412, 81st Cong., 1st Sess., 1949-2 C.B. 296-301. In this modification, the "for any period which does not in fact end before his death" provision was included in 1939 Code section 811(c)(1)(B), and the "intended to take effect in possession or enjoyment at or after his death" language became section 811(c)(1)(C). Section 811(c)(1)(B) of the 1939 Code was carried forward without substantive change into the 1954 Code as section 2036. H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p. A314; S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p. 469.

Regulations promulgated under the 1939 Code provided that the "period which does not in fact end before his death" language contemplates a retention of income "for such a period as to evidence * * * [decedent's] intention that it should extend at least for the duration of his life." Sec. 81.18, Regs. 105. The regulations under the 1954 Code do not contain this limitation on the application or the statutory language, and such a limitation is not inherent in the text of section 2036. See *Estate of Robert Manning McKeon*, 25 T.C. 697, 703-705 (1956); *Estate of Ambrose Fry*, 9 T.C. 503, 507 (1947); *Townsend* v. *Thompson*, an unreported case (E.D. Ark. 1950, 42 A.F.T.R. 1309, 50-2 U.S.T.C. par 10,780); cf. *Estate of Marvin L. Pardee*, 49 T.C. 140, 149-150 (1967); Lowndes & Kramer, Federal Estate and Gift Taxes, sec. 8.9, p. 140 (2d ed.). However, there is some authority for the proposition that, because of the legislative history of the language and the administrative construction given to the 1939 Code, the provision has obtained a gloss which requires that the period for which the income was retained must indicate an intention on the part of the decedent to retain the income for his life. *National Bank of Commerce in Memphis* v. *Henslee*, 179 F. Supp. 346 (M.D. Tenn. 1959).

Under either interpretation of the "for any period which does not in fact end before his death" language, the farm is includable in de-

cedent's estate. Under the literal reading, the answer is obvious. Under the more flexible construction, we think decedent intended to retain enjoyment of the income for her life. The 5-year lease covered a period not much shorter than her life expectancy of 6 or 7 years, and the lease provided for a possible future renewal. Davis testified that decedent retained the rent from the transferred farm because "she had to have some income to live." From this evidence, we infer that the parties intended to renew the lease if decedent did not die within the 5-year term, and that there was, at the time of the transfer, at least an implicit understanding to that effect.

Referring to the fact that the rents were retained under the lease rather than the deed, petitioner contends that only the value of the leasehold interest is includable in the taxable estate. However, the lease and deed, executed within 11 days of each other, cannot be considered independently; the lease expressly referred to the possible subsequent execution of the deed. The net effect of the two instruments, read together, was to transfer the entire farm and to reserve all the rent therefrom for decedent for a period of at least 5 years. Section 20.2036–1(a), Estate Tax Regs., provides that if the decedent "reserved an interest or right with respect to all of the property transferred by him, the amount to be included in his gross estate under section 2036 is the value of the entire property." As stated in *McNichol's Estate* v. *Commissioner, supra* at 671, "one of the most valuable incidents of income-producing real estate is the rent which it yields. He who receives the rent in fact enjoys the property." See also *Estate of Roy Barlow*, 55 T.C. 666 (1971). Thus, the value of the entire farm must be included in decedent's taxable estate.

Petitioner next argues that, in any event, decedent retained the income from only part of the farm in that the lease called for rent of one-third of the grain crops grown on the land and provided for no rent for that part of the land used for grazing. We think this argument is without merit.

The lease signed by decedent calling for rental payments consisting of one-third of all grain crops grown on the premises covered the entire farm, including the pastureland. The parties have stipulated that "One-third (⅓) of all grain crops grown on leased premises delivered free of cost to the lessor is a standard landlord's portion of crop-share rent for farm land in Chouteau County, Montana," where the farm was located. While there is evidence that only 288 of the 640 acres were planted to crops, we think the lease agreement and the stipulation show that decedent received the customary rent for her entire farm as an economic unit, and that such rent represented compensation for both the cropland and the pastureland. Our interpretation

of the lease and stipulation is confirmed by testimony that the grassland on the farm was not good pastureland and further testimony that no additional rent is usually paid for pastureland of poor quality included in a farming unit covered by a crop-share lease. In any event, in view of the terms of the lease and the stipulation, substantial evidence would be required to show that the rent which was paid covered only the cropland, and petitioner has not made such a showing.

We hold that the value of the farm is includable in decedent's taxable estate.

*Decision will be entered under Rule 50.*