ESTATE OF FLORENCE HONIGMAN, DECEASED, ABRAHAM
SHLEFSTEIN, EXECUTOR, PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 8327-73.    Filed September 28, 1976.

*Seymour Frank,* for the petitioner.
*Peter W. Mettler,* for the respondent.

TANNENWALD, *Judge:* Respondent determined a deficiency of
$10,024.95 in the estate tax of Florence Honigman. The only
issue before us is whether the value of a residence is to be
included in the estate as a transfer subject to a retained interest
under section 2036.[1]

### FINDINGS OF FACT

Some of the facts are stipulated and are found accordingly.
The stipulation of facts and attached exhibits are incorporated
herein by this reference.

Abraham Shlefstein is the executor of the Estate of Florence
Honigman, who died at the age of 56, a resident of Brooklyn,
N.Y., on June 2, 1969. At the time the petition was filed, the
executor also resided in Brooklyn. A Federal estate tax return
was timely filed with the Internal Revenue Service in Brooklyn.

Decedent's husband died in June 1968. Thereafter decedent
owned and lived alone in their three-bedroom residence, in
which she also carried on her employment as a bookkeeper.
During the same period, decedent's daughter lived with her own
family in a small apartment. Decedent decided to give the
residence to her daughter, who would have the option of selling

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless
otherwise indicated.

or occupying it. Decedent did transfer the property to her daughter on April 2, 1969. In connection with this transaction, a Federal gift tax return was filed by the executor in 1970.

Decedent's daughter and son-in-law decided to sell the residence, intending to reinvest the proceeds in a larger house which would contain a separate apartment for decedent. They persuaded decedent to live with them, despite her initial reluctance to do so. On April 10, 1969, decedent's daughter and son-in-law contracted to purchase such a new home. Title to this property was scheduled to pass on June 30, 1969, but the contract was canceled due to decedent's death.

On May 9, 1969, decedent's daughter contracted to sell the residence she received from decedent. Decedent participated actively in the negotiations leading up to the contract of sale. Closing on this contract was scheduled for August 15, 1969, at which time the premises were to be "vacant and broom clean." Closing actually occurred on July 22, 1969.

Decedent continued to live in the house given to her daughter until she entered the hospital during her last illness. She continued to do her bookkeeping work there. It was the intent of decedent, her daughter, and her son-in-law that she occupy the residence until she moved into the planned new house. Decedent's daughter wanted her to stay in the house until it was sold, partly to prevent vandalism and for the convenience of the broker in showing the property to prospective purchasers. There were no other living quarters available to decedent had she vacated the residence before the new house was available. She paid no rent to her daughter and her estate paid telephone and utility bills on the property covering periods after April 2, 1969. Decedent's daughter paid the final insurance premium on the premises in October 1969.

### ULTIMATE FINDING OF FACT

Decedent retained the possession or enjoyment of the residence which she gave to her daughter for a period which did not in fact end before her death.

### OPINION

The facts of this case as set forth above are simple and virtually undisputed. The issue is whether those facts require

the inclusion of the value of decedent's residence in her estate under section 2036, which provides in pertinent part:

SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has *retained* for his life or for any period not ascertainable without reference to his death or *for any period which does not in fact end before his death—*

(1) the possession or enjoyment of, or the right to the income from, the property * * *

[Emphasis added.]

This section is phrased in the alternative and requires property to be included in the decedent's estate if she *retained the actual possession* or enjoyment thereof, regardless of whether she had any enforceable *right* to do so. Possession or enjoyment is retained under a gift when there is an express or implied understanding to that effect among the parties at the time of the transfer. *Guynn v. United States,* 437 F.2d 1148 (4th Cir. 1971); *Estate of Francis M. Hendry,* 62 T.C. 861 (1974); *Estate of Emil Linderme, Sr.,* 52 T.C. 305 (1969). Although decedent's daughter testified that the decision to sell the house was taken after the gift, the evidence shows that these events must have been virtually simultaneous. The daughter and son-in-law contracted to buy a new residence just 8 days after the gift. At that time there was an express understanding that decedent would continue to occupy the old residence until living quarters were available in the new house. In any event, we conclude that there was at least an implied understanding at the time of the gift that decedent would live in the house until her daughter sold it. Petitioner attempts to avoid the impact of these facts by arguing that decedent's continued occupancy was solely for her daughter's benefit, i.e., to protect against vandalism and to assist in selling the property. Arguably such occupancy would not amount to a "retention" of possession or enjoyment by decedent;[2] but we are convinced by all the evidence that any benefits flowing to decedent's daughter were only peripheral consideration for decedent's continuing to live on the premises. Decedent's daughter never sought to occupy the property; the

---

[2] Cf. *Estate of Allen D. Gutchess,* 46 T.C. 554 (1966); *Estate of William H. Myers,* T.C. Memo. 1968-200.

only use she ever intended to put it to was to sell it. All parties intended that until a sale occurred decedent would make her home and place of business there just as she had previously. Obviously this intention arose from practicality, affection, and common decency and would not have vanished in the absence of any incidental benefit to the daughter. The understanding between decedent and her daughter at the time of the gift constituted the retention of beneficial possession or enjoyment under the transfer, within the meaning of section 2036.

It is undisputed that the house in question was decedent's actual residence up to the time of her death. This case therefore fits within the literal wording of the statute, requiring only that possession or enjoyment be retained by the decedent "for any period which does not in fact end before [her] death." The result appears harsh—had decedent lived a few months longer and had events transpired as planned, there would probably be no argument that the house was includable in her estate[3]—but, if dictated by the statute, it must be imposed. This Court has on several occasions noted, but not adopted, a possible interpretation of section 2036 which would permit us to hold for petitioner. *Estate of Francis M. Hendry,* 62 T.C. at 875-876; *Estate of Ethel R. Kerdolff,* 57 T.C. 643, 649 (1972); *Estate of Marie J. Nicol,* 56 T.C. 179, 183 (1971). In *National Bank of Commerce in Memphis v. Henslee,* 179 F.Supp. 346 (M.D. Tenn. 1959), the court determined that the corresponding provision (section 811(c)(1)(B) of the 1939 Code) required gifts to be included in a transferor's estate only when the facts showed that his possession, enjoyment, or right to income—which *in fact* was retained until his death—was *intended* at the time of the gift *to endure for his lifetime.*[4] The District Court relied both on the legislative history of the Revenue Act of 1932 (S. Rept. No. 665, 72d Cong., 1st Sess., 1939-1 C.B. (Part 2) 496, 532) and on Treasury regulations interpreting the 1939 Code (sec. 81.18, Regs. 105, as amended by T.D. 5834, 1951-1 C.B. 72, 81, par. 8(A)). We find the cited legislative history to be inconclusive and subsequent reenactments have not been accompanied by clarification of congressional intent on this issue. Significantly, respondent's regulations (sec. 20.2036-1(a), Estate Tax Regs.),

---

[3] Respondent does not argue that the gift was made in contemplation of death.
[4] The court found on the facts before it that such an intention did exist. See 179 F. Supp. at 352.

which, insofar as this case is concerned, have been in effect since June 23, 1958 (see T.D. 6296, 1958-2 C.B. 432, 499), no longer make intention a test of includability under section 2036. See also *Estate of Francis M. Hendry, supra; Estate of Ethel R. Kerdolff, supra; Estate of Marie J. Nicol, supra.* We note, however, that this Court's decisions under the 1939 Code held that the phrase "for any period which does not in fact end before his death" should be interpreted literally and rejected any limitation on its application where the decedent's retained possession, enjoyment, or right to income might have ended before his death if it did not in fact do so. *Estate of Robert Manning McKeon,* 25 T.C. 697, 704 (1956); *Estate of Ambrose Fry,* 9 T.C. 503 (1947). See *Estate of Marie J. Nicol, supra.* Although there is some indication in the legislative history that Congress was thinking of situations where the period of retention was such as to evidence an intention that decedent's possession or enjoyment should continue for his life (see S. Rept. No. 665, *supra*), the wording of section 2036 itself is clear and unambiguous and reflects no such qualification. Such being the case, we find ourselves unable to adopt a loose construction in order to aid this petitioner (see Lowndes, Kramer & McCord, Federal Estate and Gift Taxes 201-202 (1974))—a course which could open up a Pandora's box of litigation.[5] Accordingly, respondent must prevail.

*Decision will be entered for the respondent.*

---

[5] "[I]nquiries into subjective intention, especially in intrafamily transfers, are particularly perilous." See *United States v. Estate of Grace,* 395 U.S. 316, 323 (1969).