ESTATE OF MAE E. CALLAHAN, DECEASED, RIVER FOREST STATE BANK AND TRUST COMPANY, TRUSTEE, ET AL, [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Estate of Callahan v. Commissioner
Docket Nos. 5358-77, 4006-79.
United States Tax Court
T.C. Memo 1981-357; 1981 Tax Ct. Memo LEXIS 382; 42 T.C.M. (CCH) 362; T.C.M. (RIA) 81357; July 13, 1981. Robert A. Bransley, for the petitioner. Judith Picken, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency of $ 15,556 in the Federal estate tax of the estate of Mae E. Gallahan, *386 deceased. The issues are: (1) Whether the Commissioner mailed statutory notices of deficiency and liability to the proper parties prior to the expiration of the applicable periods of limitations; and (2) if so, whether decedent, when she transferred part of the legal title to her residence to her children, retained the full possession and enjoyment of the residence until her death so as to require that its fair market value at the date of her deaht be included in her gross estate pursuant to section 2036(a)(1), Internal Revenue Code of 1954. [2]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Decedent died February 16, 1975. At the time of her death, she lived in a house located in River Forest, Illinois (hereinafter the Residence). A Federal estate tax return was filed for the estate of Mae E. Callahan on July 8, 1975. Under the section entitled "Executor, administrators (including ancillary executors and administrators), or persons in *387 possession of property" appeared the following: Name
Designation
Address
River Forest State Bank
Trustee
7727 Lake Street
& Trust Company
River Forest, Ill. 60305
Under the section entitled "Name and location of court where will was probated or estate administered" appeared the following: "Will filed Circuit Court of Cook County, Ill.--No estate opened." Under the section entitled "Signature of executor, administrator, or person in possession of property" appeared the following: RIVER FOREST STATE BANK & TRUST COMPANY As Trustee Under Trust No. 1592 And Not Personally. /s/ Mary Thomas / Asst. Trust Officer Date: 7/7/75 At the time of the filing of the petitions in these cases, petitioner River Forest State Bank and Trust Company, Trustee (hereinafter referred to as Bank), had its principal place of business in River Forest, Illinois. A statutory notice of deficiency dated May 3, 1977, determining a deficiency in the Federal estate tax due from decedent's estate in the amount of $ 15,556, was sent by certified mail addressed as follows: Estate of Mae E. Callahan, Deceased, c/o River Forest State Bank and Trust Company, Trustee under *388 Trust #1592, 7727 Lake Street, River Forest, Illinois 60305 On December 6, 1969, decedent, as grantor, executed Trust No. 1592, which named the Bank as trustee. The Bank accepted the trust and commenced and continued to act in the capacity of trustee. On or about December 6, 1969, decedent delivered to the Bank as trustee under Trust 1592 the following assets: ASSET
VALUE
American National Bank Savings
Certificate
(maturity value)
$ 15,000.00
Continental Illinois Bank
Pacesetter Account
20,000.00
River Forest Bank Golden
Account
24,000.00
United States Treasury Bills
(face value)
30,000.00
United States Treasury Bonds
(face value)
5,000.00
Cash
4,395.84
The trust agreement for Trust 1592 provided that the trust assets would be distributed to decedent's children upon her death. Under the agreement, decedent retained for her life the right to all net income of the trust, the absolute right, at her sole discretion, to invade the trust corpus, and the power to revoke or amend the trust. The assets transferred into Trust 1592, described above, were held under such trust by the Bank until decedent's death. The value of all of the assets was *389 included in the decedent's gross estate on the Federal estate tax return. Decedent's will, a copy of which was attached to the estate tax return filed with the Commissioner, left her residuary estate (after payment of debts, taxes, administrative expenses, and expenses of decedent's last illness) to the Bank as trustee of Trust 1592, to be added to the trust corpus and held or distributed as if it had been a part of such corpus immediately prior to decedent's death. The will named the Bank as executor of decedent's estate. The will was filed in the Circuit Court of Cook County, Illinois, but no probate estate was opened inasmuch as substantially all of decedent's assets passed under Trust 1592 and Trust 1591 (discussed below). A statutory notice of liability dated March 5, 1979, was sent by certified mail to the Bank, addressed as follows: River Forest State Bank & Trust Company, Trustee Under Trust #1592, 7727 Lake Street, River Forest, Illinois 60305 The notice states: We have determined an assessment against you in the amount of $ 15,556.00 * * * which constitutes you liability as a transferee of property of the Estate of Mae E. Callahan, c/o River Forest State Bank *390 & Trust Company, Trustee Under Trust #1592, 7727 Lake Street, River Forest, Illinois 60305, for estate tax * * *. The petitioner-Bank filed a petition with the Tax Court in response to the May 3, 1977, statutory notice on May 31, 1977. Petitioner filed a petition with the Tax Court in response to the March 5, 1979, statutory notice on March 27, 1979. Prior to the death of decedent's husband, John J. Callahan, on January 16, 1968, he and decedent owned the Residence as joint tenants. They occupied this property as their home. As a result of her husband's death, decedent acquired title in fee to the Residence. On December 4, 1969, decedent transferred title to the residence to the Bank as trustee under Trust 1591. The pertinent part of the trust agreement provides as follows: The following named persons shall be entitled to the earnings, avails and proceeds of said real estate according to the respective interests herein set forth, to-wit: One-Third 1/3 Undivided Interest in MAE E. CALLAHAN, and upon her death, then her children, share and share alike, per stirpes Two-Thirds 2/3 Univided Interest in PATRICIA C. FAHEY, JOHN E. CALLAHAN, and BARBARA J. CALLAHAN, (her *391 children) share and share alike per stirpes * * * the interest of any beneficiary hereunder shall consist solely of a power of direction to deal with the title to said property and to manage and control said property * * * and the right to receive the proceeds from rentals and from mortgages, sales or other disposition of said premises * * *; * * * no beneficiary hereunder at any time shall have any right, title, or interest in or to any portion of said real estate as such, either legal or equitable, but only an interest in the earnings, avails, and proceeds as aforesaid. * * * that said River Forest State Bank and Trust Company will deal with said real estate only when authorized to do so in writing and that it will, unless otherwise directed in writing by the * * * beneficiaries * * * on the written direction of Mae E. Callahan, Patricia C. Fahey, John E. Callahan and Barbara J. Callahan, or the survivors thereof * * *, deal with the title to said real estate * * *. The * * * beneficiaries hereunder in * * * their own right, shall have the management of said property and control of the selling, renting and handling thereof, and shall collect, apply and handle the rents, *392 earnings, avails, and proceeds thereof, and said trustee shall have no duty in respect to such management and control, or the collection, handling or application of such rents, earnings, avails or proceeds * * * except on written direction as hereinabove provided * * *. This transfer was reported on a gift tax return filed by decedent for 1969. The trust agreement was amended on February 28, 1970, to provide that decedent's interest was 10/57ths (decreased from one-third) and the children's interest was 47/57ths (increased from two-thirds) of the earnings, avails, and proceeds of the Residence. [3] Decedent did not file a gift tax return in connection with this amendment. On the date Trust 1591 was created, decedent had three living children: Barbara J. Callahan, John E. Callahan, and Patricia C. Fahey. These are the same individuals listed as receiving beneficial interests in Trust 1591. Barbara Callahan lived with decedent in the Residence for some years prior to the *393 execution of Trust 1591 on December 4, 1969, and she continued to live with her mother in the Residence until the latter's death. Neither John E. Callahan nor Patricia C. Fahey lived in the Residence on or after December 4, 1969. From the early 1950's until her death, decedent stayed almost constantly in her upstairs bedroom in the Residence. As of December 1969, decedent essentially confined herself to her bed, although her physician urged her to get out of bed and walk to improve her circulation. The occasions on which she left the bedroom became increasingly rare, occurring only once or twice a year toward the last few years of her life. Decedent's use of the house was the same both before the after December 4, 1969. Both before and after this date, Barbara Callahan paid all of the utility and maintenance costs of the Residence and the costs of the food which she and decedent consumed. Decedent paid the insurance premiums and property taxes. None of decedent's other children ever contributed toward any of these costs. Prior to 1969, Barbara had use of the entire house. She cooked the meals for decedent and herself in the kitchen and used the living room and dining *394 room for her own entertaining. None of these arrangements changed with the execution of Trust 1591. Barbara owned some of the furniture in the Residence, including paintings, a desk, chairs, tables, and some other household items. At the time of her death, decedent owned most of the furniture in the Residence and her furniture was spread throughout the Residence. The 1974 local real property taxes on the Residence totaled $ 1,597, all of which were deducted on the Federal estate tax return as a claim against the estate. The fair market value of the residence at the date of decedent's death was $ 69,000. On the return, only 10/57ths of this value was included in decedent's gross estate. The Commissioner has determined that all of it should have been included, and that petitioner is liable for the resulting deficiency in estate tax. OPINION Issue 1. Validity of the Statutory Notices
The first issue is whether the Commissioner issued a valid statutory notice to the petitioner prior to the expiration of the applicable period of limitations. The petitioner's theory requires us to imagine the Bank wearing several different hats, each of which, petitioner contends, *395 transforms it into a distinct, separate entity for purposes of the statute of limitations. For the reasons stated below, this we decline to do.
As a general rule, the Commissioner must assess additional tax within three years of the date the estate tax return was filed, or, if later, of the date the return was due to be filed. Sec. 6501(a) and (b)(1). Section 6212(a) authorizes the Commissioner to send a notice of deficiency in tax which he has determined "to the taxpayer by certified mail or registered mail." Section 6212(b)(3) provides that absent notice to the Commissioner under section 6903 of the existence of a fiduciary relationship, a notice of deficiency in estate tax is sufficient "if addressed in the name of the decedent or other person subject to liability and mailed to his last known address * * *." The Commissioner may not assess any deficiency in estate tax until he has mailed a properly addressed notice of deficiency to the taxpayer. Sec. 6213(a). The mailing of a valid statutory notice of deficiency suspends the running of the period of limitations on assessment. *396 Sec. 6503(a). The Bank argues that the notice mailed on May 3, 1977, is invalid because it was sent to the wrong "person." Because no estate was ever opened, contends the Bank, no entity by the name of "Estate of Mae E. Callahan" existed--that is, the Bank was never wearing its "Estate of Mae E. Callahan" hat, even though the notice was sent to and received by the Bank. According to the Bank, the estate tax return revealed on its face that the Bank was acting as a "fiduciary" with reference to the assets transferred as a result of decedent's demise. Therefore, under section 6903, [4] the Commissioner was obligated to send the notice to the Bank wearing its "fiduciary" hat, i.e., as trustee of the various assets transferred at decedent's death. The Bank does not contend that the notice should have been mailed to any location other than its own. Accordingly, in the Bank's view, the statutory notice was invalid because it was sent to the wrong person. The running of the period of limitations was thus not tolled and the period of limitations expired on November 15, 1978, [5] before the Commissioner issued the second notice dated March 5, 1979. *397 We disagree with the Bank's argument, which we feel attempts to use hypertechnicalities and irrelevant distinctions to obscure the fact that the 1977 notice was reasonably calculated to and did result in actual notice to the Bank of the determination of the deficiency by the Commissioner. Whether or not the estate tax return constituted notice to the Commissioner under section 6903(b) of a fiduciary relationship [6] seems to us irrelevant in the instant case because, even if it did constitute such notice, the May 3, 1977, statutory notice of deficiency is unquestionably valid because it was mailed to the fiduciary--the Bank--before the three-year limitations period expired. The Bank received the notice and, before the month of May was out, filed a petition with this Court. The function of a statutory notice of deficiency is to afford petitioner a full and fair opportunity to present its case in this Court. Clodfelter v. Commissioner, 527 F.2d 754 (9th Cir. 1975), affg. 57 T.C. 102 (1971); Goodman v. Commissioner, 71 T.C. 974 (1979); *398 Estate of Berry v. Commissioner, 41 T.C. 702 (1964). The Bank has not shown how it was prevented in any way from invoking the jurisdiction of this Court by the identification of the taxpayer which the Commissioner used in issuing the 1977 statutory notice.The mere fact that the first line of the address was "Estate of Mae E. Callahan" rather than "River Forest State Bank and Trust" is of no consequence, because the Bank's address appeared directly underneath and it is undisputed that the notice was received by the Bank without undue delay. Indeed, the Commissioner's address conformed entirely to the address shown by the Bank on the estate tax return. The Commissioner specified the name of the deceased and the number of the trust under which the Bank held assets included in decedent's gross estate. This was more than sufficient to notify any fiduciary of the determination. [7]
*399 We hold that petitioner was timely notified of the determination of a deficiency by the Commissioner also under the transferee provisions. Section 6901(h) provides that, for purposes of section 6901, the term "transferee" includes donee, heir, legatee, devisee, and distributee, and with respect to estate taxes, also includes any person who, under section 6324(a)(2), is personally liable for any part of such tax. Section 6324(a)(2) provides: SEC. 6324. SPECIAL LIENS FOR ESTATE AND GIFT TAXES. (a) LIENS FOR ESTATE TAX.--Except as otherwise provided in subsection (c) -- (2) LIABILITY OF TRANSFEREES AND OTHERS.--If the estate tax imposed by chapter 11 is not paid when due, then the spouse, transferee, trustee (except the trustee of an employees' trust which meets the requirements of section 401(a)), surviving tenant, person in possession of the property by reason of the exercise, nonexercise, or release of a power of appointment, or beneficiary, who receives, or has on the date of the decedent's death, property included in the gross estate under sections 2034 to 2042, inclusive, to *400 the extent of the value, at the time of the decedent's death, of such property, shall be personally liable for such tax. * * * Section 6324(a)(2) imposes a primary, substantive liability upon the persons specified therein for the payment of the estate tax. the liability for an estate tax deficiency is not conditioned upon the Commissioner's remedies against the estate and is in the nature of a direct and primary obligation independent of the obligation of the estate. Schuster v. Commissioner, 312 F.2d 311, 315 (9th Cir. 1962), affg. 32 T.C. 998 (1959). Section 6901(c)(1) provides that the period of limitations for assessment of the liability of a transferee extends one year beyond the expiration of the period of limitations for assessment against the transferor. The Bank is a "transferee" within the meaning of section 6901(h) for two reasons: (1) it is a "distributee" under decedent's will of her residuary estate, sec. 6901(h); and (2) it held, on the date of decedent's death, property included in her gross estate under sections 2034 to 2042. Sections *401 6901(h) and 6324(a)(2) must be read together. Such property consisted of assets which decedent transferred to Trust 1592 on December 6, 1969. Because she retained for life the right to all of the net income from these assets and the power to amend or revoke the trust, the assets were included (and includable) in her gross estate pursuant to sections 2036 and 2038. Therefore, the Commissioner's notice mailed on March 5, 1979, was timely because the period of limitations for assessment against petitioner did not expire until November 15, 1979. The statutory notices of deficiency and liability were mailed by the Commissioner before the respective periods of limitations on assessment had expired. Issue 2. Includability of Value of Entire Residence Pursuant to Sec. 2036. Petitioner argues that only 10/57ths of the value of the Residence as of decedent's death should be included in her gross estate because this is all that she retained under the December 4, 1969, trust agreement. Respondent argues that there was an implicit understanding between decedent and her children at the time the trust was created that decedent would continue to occupy the Residence exactly as she *402 had previously until the day she died.
Section 2036(a)(1) provides: SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE. (a) General Rule.--The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death-- (1) the possession or enjoyment of, or the right to the income from, the property, * * * Possession or enjoyment is "retained" under a gift when there is an express or implied understanding to that effect among the parties at the time of the transfer. Estate of Honigman v. Commissioner, 66 T.C. 1080, 1082 (1976). This understanding need be neither expressed in the instrument of transfer nor legally enforceable and may be inferred from all of the surrounding facts and circumstances. *403 Estate of Barlow v. Commissioner, 55 T.C. 666, 670 (1971); Estate of Linderme v. Commissioner, 52 T.C. 305, 307-308 (1969). In this case, petitioner bears the burden of disproving the existence of an intrafamilial prearrangement under which decedent retained for life the possession and enjoyment of the Residence. This petitioner has failed to do. What seems to us the most glaring indication of an implicit understanding in this case is the fact that the financial and living arrangements among decedent and her children changed not one whit following the execution of Trust 1591. Decedent and Barbara Callahan continued to live at the Residence; the other children continued to live elsewhere; decedent continued to pay the insurance and property taxes; Barbara continued to pay the maintenance, utilities, and food costs; the other children continued to pay nothing; and decedent's furniture remained spread throughout the Residence. Petitioner argues that decedent actually lived only in the bedroom, effectively relinquishing the remainder of the Residence to her children. However, decedent stayed in the bedroom because she was ill, and she did occasionally *404 leave the bedroom. Moreover, she had been staying in the bedroom for many years prior to the execution of Trust 1591. She did not sell her furniture or concentrate it in her bedroom. John E. Callahan and Patricia Fahey did not move in themselves or rent part of the Residence out to tenants and thereby take advantage of decedent's gift to them of a 47/57ths interest. These facts and circumstances lead us to conclude that the transfer conferred only naked legal title upon decedent's children and acquired a functional reality only at her death. We infer that at the time decedent and her children executed Trust 1591, there existed among them an implicit understanding that decedent would continue to occupy the Residence until her death.Therefore, the entire value of the Residence as of decedent's death is includable in her gross estate. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. The following case has been consolidated herewith: Estate of Mae E. Callahan, Deceased, Transferor, c/o River Forest State Bank and Trust Company, Trustee under Trust # 1592, and River Forest State Bank and Trust Company, Transferee Trustee Under Trust #1592, docket No. 4006-79.↩
2. All section references are to the Internal Revenue Code of 1954, as amended.↩
3. Thus, by the amendment, decedent reduced her retained interest in the Residence from 1/3 (33.33%) to 10/57ths (17.45%), a transfer of 15.79% of the total interest in the Residence to her children.↩
4. SEC 6903. NOTICE OF FIDUCIARY RELATIONSHIP. (a) RIGHTS AND OBLIGATIONS OF FIDUCIARY.--Upon notice to the Secretary or his delegate that any person is acting for another person in a fiduciary capacity, such fiduciary shall assume the powers, rights, duties, and privileges of such other person in respect of a tax imposed by this title (except as otherwise specifically provided and except that the tax shall be collected from the estate of such other person), until notice is given that the fiduciary capacity has terminated. (b) MANNER OF NOTICE.--Notice under this section shall be given in accordance with regulations prescribed by the Secretary or his delegate. ↩
5. Decedent died February 16, 1975. The estate tax return was filed July 8, 1975. It was due to be filed within nine months after decedent's death, or by November 15, 1975. Sec. 6075(a). Thus, under section 6501(b)↩, the period of limitations commenced running on the latter date.
6. Sec. 301.6903-1(b) of the Procedure and Administration Regulations sets forth the requirements for an effective notice of fiduciary relationship. ↩
7. Had the 1977 notice been addressed to the Residence rather than to the Bank, we would confront an entirely different factual context. We note that it is possible, but do not decide, that the return would have constituted sufficient notice of fiduciary status under sec. 6903↩ and that the statutory notice might have been insufficient.